# STATE v. BOBBY JUNIOR NELSON.

173 N. W. (2d) 349.

December 12, 1969—No. 41375.

*C. Paul Jones,* State Public Defender, *Robert E. Oliphant,* Assistant State Public Defender, and *Rosalie E. Wahl,* for appellant.

*Douglas M. Head,* Attorney General, *Robert C. Runchey,* County Attorney, and *Charles C. Johnson,* Fifth District Prosecutor, for respondent.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Sheran, JJ.

ROGOSHESKE, JUSTICE.

Defendant was convicted by a jury of aggravated robbery in violation of Minn. St. 609.245 and sentenced to prison for a term not to exceed 20 years. He appeals from the judgment of conviction.

The issues presented are whether the evidence was insufficient as a matter of law to support the conviction; whether there was probable cause for defendant's arrest; and whether certain items of evidence, including an incriminating statement made to the county sheriff, were properly admitted in evidence.

It is undisputed that about 11 p. m. on July 5, 1967, the Friendship Club in Tracy, Lyon County, Minnesota, was robbed of about $30 by a Caucasian male, approximately 6 feet tall, weighing 160 pounds, and having dark brown eyes. The man was wearing a green jacket or shirt and a scarf or bandanna which masked his face. He carried a sawed-off, 410-gauge shotgun which was discharged into the ceiling of the premises during the course of the robbery. The ejected shell was later found and turned over to the police.

On July 6, 1967, the Lyon County sheriff sent out a teletype message to the effect that the armed robbery had been committed on July 5, 1967, in the manner and by a person as described above. This message was received by the St. Paul police.

On July 7, 1967, one Janice DeCosse took a sawed-off, 410-gauge shotgun and clip and a partially filled box of 410-gauge shotgun shells to the rectory of St. Mary's Catholic Church in St. Paul. In response to a call from Father Bauer (a priest at St. Mary's), two detectives from the St. Paul Police Department went to the rectory; talked with Mrs. DeCosse, a Mrs. Smith, and Father Bauer; were given possession of the shotgun and shells by Father Bauer; and were told that the shotgun and shells belonged to defendant. The officers were told that defendant was

at the DeCosse residence, and it is a fair inference from the record that they were also told that he perpetrated the Tracy robbery.

The two detectives, both having seen the teletype message, took the shotgun shells to the city police station, where they consulted with their superior officer. The detectives then went to the DeCosse residence and arrested defendant. At that time he was "frisked" for a weapon, but no search of his person or of the DeCosse residence was made. Upon arrival at the police station he was searched, and the officers found four 410-gauge shotgun shells in his pocket.

Thereafter the detectives returned to the DeCosse residence, and Mrs. DeCosse voluntarily gave them a blue satchel containing, among other things, a 410-gauge shotgun shell. The satchel and its contents were taken to the police station. No search was ever made of the DeCosse residence.

When apprehended, defendant was informed he was arrested on suspicion of robbery, and when he arrived at the police station, he was informed the robbery took place at Tracy. Defendant was also informed at the time of his arrest, and later at the city jail, that he was being held for Wisconsin authorities for parole violation. Before he was questioned by the Lyon County sheriff, his parole officer visited him at the jail.

Transcripts of the hearing on defendant's pretrial motion to suppress evidence and of his trial both make clear, as the trial court concluded, that Miranda warnings were given defendant prior to the search of his person, before he was questioned by a Federal agent concerning a possible violation of the Federal Firearms Act, and again on July 13 before he was questioned by the sheriff concerning the robbery, and that defendant acknowledged that these warnings were given and that he understood them.

During the interrogation by the sheriff, defendant admitted ownership of the 410-gauge shotgun found in the DeCosse home, which he said he purchased on July 3, 1967, for the purpose of

hunting and that he purchased shells at the same time. He denied that he sawed off the barrel of the gun and said it was returned to him in that condition by a person to whom he lent it, whom he refused to name. Defendant also denied any knowledge of the robbery or that he was in Tracy (where he had attended grade school) on July 5, 1967, indicating he had not been there since the latter part of May or the first part of June.

Defendant's pretrial motion to suppress both the statement made to the sheriff and the physical evidence obtained from the priest and Mrs. DeCosse was denied. All of this evidence was offered and received at trial. In our opinion, the court, the prosecution, and the defense counsel conducted the trial with exemplary adherence to the rules designed to ensure a fair trial as well as to professional standards which all would agree should govern opposing advocates in the performance of their roles and function in the administration of criminal justice under our adversary system.[1]

1. Defendant contends that the evidence submitted by the state was, as a matter of law, insufficient to prove that he was the person who committed the robbery. He argues that the circumstantial evidence relied upon to support an inference that he was the robber was equally consistent with an inference that some third person used his gun to commit the crime.

It is true that the evidence as to identity is entirely circumstantial. Witnesses to the robbery described the robber's physical appearance, which coincided with defendant's height, weight, and color of eyes. The sheriff testified to statements made by defendant as previously set forth. The ejected 410-gauge shotgun shell found at the scene of the crime and the 410-gauge shotgun turned over to the priest by Mrs. DeCosse were examined by a laboratory analyst of the Minnesota Bureau of Criminal Ap-

---

[1] The state was represented at trial by the county attorney and the Fifth Judicial District public prosecutor, and the defendant by the Fifth Judicial District assistant public defender and the assistant state public defender.

prehension. He testified it was his opinion that the shell had been fired from defendant's gun. He also testified it was his opinion the 19 shells delivered by the priest to the police, the 4 shells found in defendant's pocket at the time of his arrest, the shell found in the satchel, and the fired shell found at the scene of the crime, were similar in construction, the same size, and together constituted a full box of 410-gauge shotgun shells.

Lyle Fredericks, a resident of Tracy who had known defendant for 4 or 5 years, testified that defendant stopped at his home in Tracy at about 10 or 10:30 on the evening the crime was committed, and that defendant was carrying a small bag.

Mrs. DeCosse testified she was with defendant on July 4 and on July 5 until about 3:30 p.m., at which time she loaned him $10. She testified she next saw him July 6 at about 10 or 11 p. m., and that they spent the evening together; that during the evening she called her boys at home at defendant's request and told them to go to some friend's home and pick up two bags; that she called home again about 1 a. m. and her boys told her there was a loaded gun in the bag; that she and defendant went to her home and the boys went to sleep; that she burned a pair of socks, a green shirt, and the wood stock of the 410-gauge shotgun in the basement of her home at the suggestion of defendant; that the wood stock was part of the 410-gauge shotgun she later delivered to the priest; that she had never seen defendant wear the green shirt she had burned; that when she saw defendant on July 6 she "guessed" he had about $30 in his possession; and that she believed defendant bought a gun at Sears on July 3.

Mindful of the fundamental principle that a conviction upon circumstantial evidence cannot be sustained against the presumption of innocence unless the reasonable inferences from such evidence are consistent only with defendant's guilt and inconsistent with any rational hypothesis except that of guilt, we are satisfied that the evidence of identification was not insufficient as a matter of law and was ample to permit the jury to infer, consistent with the above standard, that the defendant and

not some third person committed the offense. State v. Kotka, 277 Minn. 331, 152 N. W. (2d) 445.

2. Defendant also asserts that there was no probable cause for his arrest. We cannot agree. When the arrest was made the police officers knew that a robbery had in fact been committed by a man carrying a sawed-off, 410-gauge shotgun and that defendant owned such a gun, which was delivered to them by persons who suspected that he had committed the crime. Upon arriving at the DeCosse residence, the officers could observe that defendant fit the physical description of the robber. Such facts clearly would warrant a cautious man to reasonably believe that defendant committed the robbery. State v. Sorenson, 270 Minn. 186, 134 N. W. (2d) 115.

3. Nor can we accept defendant's claim that the blue satchel and shotgun shell were the products of an unconstitutional search and seizure and thus inadmissible. In our opinion, the voluntary delivery of the satchel to the police by Mrs. DeCosse was not a search and seizure within the meaning of the Fourth Amendment to the Federal Constitution since no right of privacy thereby secured to the person arrested was breached. In United States v. Pate (7 Cir.) 324 F. (2d) 934, 935, where defendant's wife voluntarily gave police officers defendant's bloody shirt when asked for it, the court said:

"* * * Police officers went to the premises where incriminating evidence was found and were voluntarily given the shirt. Their action did not constitute a search. * * *

"* * * 'A search implies an examination of one's premises or person with a view to the discovery of contraband or evidence of guilt to be used in prosecution of a criminal action. The term implies exploratory investigation or quest.' Petitioner's privacy was not invaded; there was no inspection or examination of his household. Under these circumstances, we hold there was no search either in an actual or legal sense."

The conduct of the arresting officers in this case is analogous to that in the Pate case. In both, no search and seizure in a

physical sense occurred. Rather, the evidence sought to be excluded was voluntarily given to the police by the persons in lawful possession. We hold that there was no illegal search and seizure, and that the evidence was properly admitted.

4. Finally, defendant contends that the trial court erred in admitting statements of his ownership of the gun made by him to the sheriff 6 days after he had been arrested and prior to his being brought before a magistrate. While we do not approve of delay in bringing one arrested before a magistrate in disregard of the command of Minn. St. 629.14, under the circumstances shown we fail to see how such a delay was prejudicial—requiring exclusion of defendant's otherwise voluntary admission of ownership of the shotgun—especially in view of other undisputed evidence of his ownership. Moreover, although the record is not clear, failure to promptly charge defendant with the robbery offense may well have been due to the fact that the police knew defendant to be a parole violator and were awaiting disposition by the paroling authorities before filing formal charges of robbery. This record would not support a finding that the delay resulted in prejudice to defendant's fundamental rights.

Affirmed.