STATE of North Dakota, Plaintiff
and Respondent,

v.

Frank HOWE, Defendant and Appellant.

Cr. No. 391.

Supreme Court of North Dakota.

Dec. 9, 1970.

Rehearing Denied Jan. 19, 1971.

Thompson, Lundberg & Nodland, Bismarck, for defendant and appellant.

Helgi Johanneson, Atty. Gen., Dale H. Jensen, State's Atty., and William G. Engelter, Asst. State's Atty., Burleigh County, Bismarck, for plaintiff and respondent.

PAULSON, Judge.

Frank Howe has appealed to this Court from the verdict of guilty and final judgment upon a conviction of the crime of burglary in the Burleigh County District Court. Mr. Howe's specification of error is that the district court failed to grant his written, oral, and standing motion for a return of seized property and for suppression of evidence. Thus, Hr. Howe, has raised the issue of whether the verdict of the jury resulted from inadmissible evidence submitted at the trial.

Mr. Howe was convicted of burglarizing the Bismarck residence of Arseius Volk, from which used wearing appeal, namely, two men's suits, were taken. The burglary was committed while Mr. and Mrs. Volk were away on vacation. The burglary was first called to the attention of the

Bismarck Police Department on June 19, 1969, when the Volks returned from their vacation trip. The following day, the Bismarck Police Department was provided with an inventory of the items missing from the Volk residence.

A few days later, Lieutenant Clarence Conitz of the Bismarck Police Department received a telephone call from the manager of Mars Cleaners, a business establishment located in Bismarck. The manager informed Lieutenant Conitz that Frank Howe had left an assortment of clothing at Mars Cleaners, and the manager then requested that the police conduct an investigation. Subsequently, Mrs. Volk was taken to Mars Cleaners, whereupon she positively identified two of her husband's suits. Furthermore, these same suits were identified as missing from the Volk residence after the burglary in question. The manager then released the two suits to the police. At no time did the Bismarck Police Department obtain a search warrant for Mars Cleaners.

The complaint against Frank Howe charging him with burglary was made and a warrant for his arrest was issued on June 30, 1969. In addition, on the same date, a search warrant was approved and issued to search the home of Mrs. Eloise Howe, the mother of Frank Howe, as Frank Howe and his wife also resided at that residence.

During the evening of June 30, 1969, and after Mr. Howe had been arrested, police officers went to the residence of Mrs. Eloise Howe and presented her with the search warrant. No property identified as having been taken in the burglary of the Volk residence was seized during the search of the Howe home. However, while the search warrant was being read to Mrs. Eloise Howe, another police officer, while inspecting the grounds, observed a box of clothing and miscellaneous articles which were in plain view and located near the northwest corner of the house. Mrs. Volk later identified this

personal property as belonging to the Volks and stated that the property had been missing from their home since the burglary in question.

At this point it should be noted that the State and Mr. Howe are in disagreement as to whether the search warrant used for the search of the Howe residence conformed to § 29–29–04 of the North Dakota Century Code. Section 29–29–04, N.D.C.C., requires that a magistrate, before issuing a search warrant, must take a written affidavit from the complainant and from any witness the complainant may produce, after having examined these persons under oath. Each affidavit must set forth the facts which tend to establish the grounds of an application or probable cause for believing that the facts exist. On appeal, Mr. Howe correctly sets forth that no affidavit appears in the judgment roll. However, the attorney for the State urges that there is a copy of the complaining officer's affidavit in the state's attorney's file, but that he was unable to also locate the original affidavit of the officer.

Before Mr. Howe's trial, a written motion for suppression of this evidence was served and filed on October 9, 1969, which motion was restated orally in open court on the following day. The motion to suppress was denied by the trial court on October 16, 1969. Mr. Howe renewed such motion at the commencement of trial on the same day. The trial court ordered that a standing objection as to any testimony pertinent to Mr. Howe's motion would be permitted.

Mr. Howe was charged specifically with taking the two suits, which were recovered at Mars Cleaners, as a result of the burglary of the Volk residence. Nevertheless, all of the personal property found beside the home of Mrs. Eloise Howe, as well as the two suits seized from Mars Cleaners, were introduced in evidence.

The jury found Frank Howe guilty of the crime of burglary. Mr. Howe bases

his appeal on the contention that his conviction was founded upon evidence seized in violation of constitutional guarantees secured to him by the Fourth and the Fourteenth Amendments of the United States Constitution, and by § 18 of the North Dakota Constitution, the relevant provisions of which read as follows:

Article IV of the U. S. Constitution:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Article XIV, § 1, U. S. Constitution:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

§ 18, N. D. Constitution:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

Furthermore, it is Mr. Howe's contention that the search warrant used as authority to search his mother's home was in violation of the following North Dakota statutes:

29-29-03, N.D.C.C. *"Issued only upon probable cause.*—A search warrant can be issued only upon probable cause, supported by affidavit naming or describing the person, and particularly describing the property and the place to be searched."

29-29-04, N.D.C.C. *"Sworn complaint must be made—Depositions of witnesses.* —The magistrate, before issuing a search warrant, must examine on oath the complainant and any witnesses he may produce, and must take their affidavits in writing and cause them to be subscribed by the parties making them. The depositions must set forth the facts tending to establish the grounds of the application or probable cause for believing that they exist."

29-29-10, N.D.C.C. *"Search warrant to be served in daytime—Exception.—* The magistrate issuing a search warrant must insert a direction in the warrant that it be served in the daytime, unless the affidavits are positive that the property is on the person or in the place to be searched. In that case he may insert a direction that it be served at any time of the day or night."

29-29-12, N.D.C.C. *"Return of warrant.—*The officer executing a search warrant must return the warrant to the magistrate forthwith, and deliver to him a written inventory of the property taken, made publicly or in the presence of the person from whose possession it was taken and the applicant for the warrant, if such persons are present, verified by the affidavit of the officer, and taken before the magistrate, in substantially the following form:

"I, A. B., the officer by whom this warrant was executed, do swear that the above inventory contains a true and detailed account of all the property taken by me on the warrant."

29-29-13, N.D.C.C. *"Copy of inventory—To whom delivered.—*The magis-

trate, upon the return of the warrant, if required, must deliver a copy of the inventory to the person from whose possession the property was taken, and to the applicant for the warrant."

29–29–16, N.D.C.C. *"Papers relating to search warrant to be returned to district court.*—The magistrate must bind together the depositions, the search warrant and return, and the inventory, and return them to the next term of the district court having authority and jurisdiction to inquire into the offense in respect to which the search warrant was issued, at or before its opening on the first day."

On appeal, Mr. Howe has cited numerous cases in support of his argument that seizure of the clothing from Mars Cleaners without a search warrant was illegal. However, none of the cases cited concerns specifically a dry cleaning establishment whereby the manager thereof has permitted police officers without a search warrant to look at and subsequently seize property.

Mr. Howe has cited Lord v. Kelley, 223 F.Supp. 684 (U.S.D.C.Mass.1963), which held that where tax records entrusted to professional accountants for the purpose of preparing tax returns were delivered by the accounting firm to the Internal Revenue Service, an unlawful seizure existed, since the taxpayers had given to the firm neither express nor implied authority to do so. However, this decision is distinguishable from the case at bar, since in Lord v. Kelley, *supra*, 223 F.Supp. at 690, it was held that such seizure:

" * * * amounted to a tortious conversion of the clients' records and a tortious inducement of breach of confidential contractual relations between the clients and the accountant * * *."

Certainly, entrusting a dry cleaner with clothing neither requires nor intimates a need for privacy or for privileged communication, as is the case with a client and his accountant. In State v. Cox, 258 Wis. 162, 45 N.W.2d 100, 103 (1951), the Wisconsin Supreme Court stated, referring to the case of Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543:

"It appears that that case is authority for the doctrine that search for and seizure of stolen goods is to be considered as on a different basis and as totally different from a search for and seizure of a man's private books and papers for the purpose of obtaining information therein contained or for using them as evidence against him."

Mr. Howe has cited Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); People v. McGrew, 1 Cal.3d 404, 82 Cal.Rptr. 473, 462 P.2d 1 (1969); and State v. Wade, 89 N.J.Super. 139, 214 A.2d 411 (1965), in support of his effort to demonstrate that he had a right to object to the search of Mars Cleaners even though he made no claim of ownership of the clothes seized, was not present during the search, and had no possessory interest in the premises searched.

However, Mr. Howe has overlooked a primary protective cloak of the Fourth Amendment protection. In Katz v. United States, 389 U.S. 347, 351–352, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the United States Supreme Court concisely defined the scope of this particular provision of the Fourth Amendment when it stated:

"For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. [Citations omitted.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."

A case factually similar to the case at bar is Clarke v. Neil, 427 F.2d 1322 (6th Cir. 1970), reported in the Tennessee Supreme Court as Clarke v. State, 218 Tenn.

259, 402 S.W.2d 863 (1966), cert. denied 385 U.S. 942, 87 S.Ct. 303, 17 L.Ed.2d 222 (1966), cited as Clarke v. Henderson, 403 F.2d 687 (6th Cir. 1968). Clarke was convicted of first-degree murder and, during the trial, he objected to the admission of testimony by an expert from the Federal Bureau of Investigation as to the laboratory examination performed on a suit jacket which revealed certain fibers matching those in the murder victim's clothing. The police had acquired the suit when they were informed by Clarke that he had taken a dark suit to the dry cleaners the day after the murder; and Clarke's wife informed police that Clarke had been wearing that suit on the day of the murder. The police went to the dry cleaning establishment after closing hours and the service manager located the suit and surrendered it to them. Clarke conceded that the manager may have had the authority to consent to a search of the dry cleaning premises, but that the manager could not consent to a search of the suit. The majority of the United States Court of Appeals for the Sixth Circuit, in Clarke v. Neil, *supra,* rejected this argument on the ground that Clarke delivered his suit to the cleaners, knowing that the suit would be subject to public view and would be handled or examined by many persons. In addition, Clarke had made no effort to conceal the suit or anything contained in it or on it; nor did he attempt to restrict the number of persons who handled it.

 A warrantless search is permissible if it is consented to by a proper party. Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). Certainly the manager of Mars Cleaners had authority to admit the police and allow them to search the premises. In addition, Mr. Howe delivered the suits to the cleaners, which was open to public view. He knew that the suits would be handled and examined by many persons, but he did not

try to conceal the suits or anything contained therein, nor did he try to restrict the number of persons who would handle them. The conduct of the manager in contacting the police officers, permitting an examination and identification of clothing by the police officers and by Mrs. Volk, and the subsequent release of the two suits to the police were all voluntary acts of the manager of Mars Cleaners. No search and seizure in a physical sense occurred. State v. Nelson, 285 Minn. 304, 173 N.W.2d 349 (1969). Thus it is our opinion that there has been no invasion of any property which Mr. Howe sought to preserve as private.

Frank Howe has contended that the search warrant issued as authority for searching his mother's home was invalid, in that it did not comply with §§ 29-29-03, 29-29-04, 29-29-10, 29-29-12, 29-29-13, and 29-29-16, N.D.C.C. The State argued that, since no clothing was seized at Mrs. Eloise Howe's home pursuant to the search warrant, the technical requirements of Chapter 29-29, N.D.C.C., were not a part of the State's case against Frank Howe. However, as previously set forth in this opinion, the facts indicate that while the search warrant was being read to Mrs. Eloise Howe, another police officer found some clothing and miscellaneous articles in a box on the ground alongside the Howe residence, which clothing and miscellaneous articles had been taken during the burglary of the Volk residence. These articles of clothing and miscellaneous items were introduced in evidence during Frank Howe's trial, but Mr. Howe was not charged in the criminal information with having taken any of these things during the Volk burglary.

 In State v. Erdman, 170 N.W.2d 872, 873 (N.D.1969), in paragraph 8 of the syllabus, the Court stated:

"8. If a search is unlawful, the discovery of evidence against one suspected of a violation of law does not make it lawful. The search is either good or

bad when it starts, and the result of the search does not determine whether it was reasonable or unreasonable."

An examination of the judgment roll reveals that no supporting affidavit was filed with the search warrant. Although the attorney for the State has argued in his brief that there is a copy of such an affidavit in his file, this does not comply with §§ 29–29–03, 29–29–04, and 29–29–16, N.D.C.C. On this basis alone, the search warrant is invalid.

Mr. Howe urges that the supplementary offense report which was prepared and filed by the police department does not comply with §§ 29–29–12 and 29–29–13, N.D.C.C. A review of the record and a perusal of the pertinent statutes reveal that the supplementary offense report does not comply with the code sections mentioned and therefore does not constitute a written inventory as required by the statutes of the State.

Section 29–29–10, N.D.C.C., requires that a search always be made during the daytime unless the affidavits are positive that the property is on the person or in the place to be searched. Mr. Howe averred that the search was made wrongfully in the nighttime. Conflicting testimony reveals that the search was begun before dark, some time between 9:30 p. m. and 10:00 p. m., but the search was not completed until after the onset of darkness. Nevertheless, § 29–29–10, N.D.C.C., must be held to have been violated, since no affidavit was filed upon which a determination could be made as to whether a night search should be permitted. The search was not made incident to any arrest. Thus, when the officer seized items in plain view to him on the grounds of the Howe residence, he could only have done so if the search warrant was valid, since he had no other basis for being on the Howe property. Therefore, since the search was unlawful from its commencement, the discovery of evidence against one suspected of a violation of law did not make it law-

ful. State v. Erdman, *supra*, 170 N.W.2d at 873, paragraph 8 of the syllabus. However, in State v. Manning, 134 N.W.2d 91, 93 (N.D.1965), in paragraph 13 of the syllabus, we held:

"Where the conviction of the defendant is sustained by other than the disputed evidence, error in permitting the introduction of such disputed evidence, to justify reversal, must be error which is obnoxious to fundamental criminal procedure. Where the error committed by the court is fundamental, the appellate court may not affirm the conviction even if it is without doubt of the defendant's guilt."

It is our opinion that in the case at bar the search of the Howe residence, while improper, was not so odious or obnoxious to fundamental criminal procedure as to constitute reversible error.

In addition, Frank Howe contends, on this appeal, that his conviction was founded upon evidence seized in violation of constitutional guarantees secured to him by the Fourth and the Fourteenth Amendments to the United States Constitution. When considering the question whether evidence which was obtained from an illegal search and seizure and which was admitted during the course of the trial violated the Federal Constitution, or whether it constituted harmless error, it is necessary to apply the tests that the United States Supreme Court has set forth in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 2d 705, 24 A.L.R.3d 1065, reh. den. 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); 30 A.L.R.3d 140, § 4. The United States Supreme Court, in Chapman v. California, *supra*, 386 U.S. at 24, 87 S.Ct. at 828, stated:

" * * * when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

In holding that a particular error did not contribute to the verdict of guilty, what is meant is that the wrongfully admitted evidence did not prove an element of the crime which was not established by other, properly admitted, evidence. People v. Landgham, 257 N.E.2d 484 (Ill.App.1970).

In Harrington v. California, *supra*, 395 U.S. at 254, 89 S.Ct. at 1729, the United States Supreme Court stated:

"Our judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the two confessions on the minds of an average jury."

In the instant case, the illegally obtained evidence neither proved an element of the crime nor did it convince the jury on its own that a crime had taken place. Suffice to say, the evidence was cumulative. In State v. Davidson, 44 Wis.2d 177, 170 N.W. 2d 755, 765 (1969), the court said:

"Where an illegal search produces evidence which is merely cumulative, the admission into evidence of such cumulative evidence is not necessarily prejudicial error."

Numerous cases have held that where other evidence of a defendant's guilt was so overwhelming that if error occurred in admitting evidence obtained through an illegal search and seizure, such error was harmless. 30 A.L.R.3d 167, § 8(c). Thus, in regard to the evidence illegally obtained from the Howe residence, had it not been introduced into evidence, the remaining evidence so overwhelmingly tends to indicate Frank Howe's guilt that the introduction of such evidence constituted harmless error. For the reasons above stated, any violation of § 18 of the North Dakota Constitution is also held to be harmless error.

For the reasons stated in the opinion, the judgment of the district court is affirmed.

TEIGEN, C. J., STRUTZ and KNUDSON, JJ., and KELSCH, D. J., concur.