STATE v. JOSEPH NORRIS MORGAN.

188 N. W. (2d) 917.

July 9, 1971—No. 42124.

*C. Paul Jones,* State Public Defender, and *Doris O. Huspeni,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *Robert W. Johnson,* County Attorney, and *Gerard W. Snell,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Rolloff, JJ.

PER CURIAM.

Appeal from a conviction for the crime of aggravated forgery. Appellant's only claim is that there was insufficient evidence to justify the jury in finding him guilty beyond a reasonable doubt.

Appellant was convicted for having uttered a forged instrument in violation of Minn. St. 609.625, subd. 3. The conviction for forgery rested upon evidence indicating that appellant had conspired with and aided one Mary Ann Maycumber in committing the crime of aggravated forgery, thereby becoming criminally liable for the crime pursuant to Minn. St. 609.05.

It appears from the record that in the forenoon of October 21, 1968, appellant, accompanied by a 14-year-old girl, returned a truck he had rented from one Rose LeTourneau. A Mary Ann Maycumber and a Jim

Nelson followed appellant to the LeTourneau residence in a 1961 Cadillac, driven by Mary Ann. While at the LeTourneau residence, appellant, Mary Ann, Rose LeTourneau, and the minor girl discussed the idea of writing checks on the account of Karl's Cycle Shop, which is located in Minneapolis. Mary Ann, in the presence of appellant, began signing as drawer the name "Paul Newcomb," who was the owner of Karl's Cycle Shop, and "Elberta Blomberg" as the payee. Some 12 or 13 checks were thus written. After Mary Ann had signed the checks, one of the other three persons in the room placed on them an inscription from a check protector. After the parties had completed all the check-writing, appellant drove the minor and Mary Ann, in the Cadillac, to Park T. V. and Appliance, a store in Spring Lake Park. The three then decided that Mary Ann should cash one of the Karl's Cycle Shop checks for a downpayment of $15 on the purchase price of a television set. Using identification supplied by Rose, Mary Ann attempted to cash one of the checks. However, her attempt was unsuccessful since the store did not have enough money on hand to make change for the check. After this unsuccessful attempt, the three traveled to the Blaine Liquor Store. There Mary Ann entered the liquor store alone and purchased some liquor with a $92.88 check which she had written on Karl's Cycle Shop's account. While Mary Ann was inside the liquor store, appellant entered the store and purchased a quart of beer. Mary Ann and appellant did not converse during the time he was in the store. Half of the change from the $92.88 check was given to the minor, while Mary Ann kept the other half for herself. Part of the half given to the minor was intended for Rose LeTourneau.

After the purchase at the Blaine Liquor Store, the three traveled to the Great Northern Trading Post. Before Mary Ann entered the store, all three in the car discussed the purchase of a gun. Mary Ann went in and purchased a revolver and two boxes of shells with another check which she had written in Karl's Cycle Shop's account.

The three made their next stop at the Meadowmoor Liquor Store, an on- and off-sale liquor store located 1 mile north of Soderville in Anoka County. Mary Ann entered the store with the minor and attempted to cash another of the Karl's Cycle Shop's checks for $112.88. The clerk called Paul Newcomb and learned that the check had been stolen. Mr. Newcomb told the clerk he would call the police and to delay Mary Ann until they arrived.

Mary Ann waited at the Meadowmoor Liquor Store for about 15 or 20 minutes before her arrest. During this interval, the appellant entered the store three times. On the third occasion he walked by Mary Ann, who was seated at the bar, and said, "Let's go," and told her where the

Cadillac was parked. He then left the store. Police observed appellant walk from the store, enter the Cadillac, and drive to the gas station south of the Meadowmoor parking lot. Appellant gave his name to the officers as "Joseph Therion Ridlespriger" and produced a driver's license bearing that name. When he was unable to spell the name correctly, he was arrested. The following day, the Cadillac was searched pursuant to a search warrant. Under the floor mat on the driver's side of the front seat, the officers found a .32-caliber revolver and the remaining 9 checks which had been written by Mary Ann at the LeTourneau residence. There is no direct evidence that appellant received any part of the money from the checks that were cashed. However, half of the money was given to the minor, who had accompanied appellant that day and was unknown to the other persons.

Minn. St. 609.625 provides in relevant part:

"Subdivision 1. Whoever, with intent to defraud, falsely makes or alters a writing or object of any of the following kinds so that it purports to have been made by another or by himself under an assumed or fictitious name, or at another time, or with different provisions, or by authority of one who did not give such authority, is guilty of aggravated forgery and may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $10,000, or both:

"(1) A writing or object whereby, when genuine, legal rights, privileges, or obligations are created, terminated, transferred, or evidenced, or any writing normally relied upon as evidence of debt or property rights * * *.

\* \* \* \* \*

"Subd. 3. Whoever, with intent to defraud, utters or possesses with intent to utter any forged writing or object mentioned in subdivision 1, knowing it to have been so forged, may be sentenced as provided in subdivision 1."

It is clear and not disputed that the actions of Mary Ann constituted a violation of the forgery statute. Appellant's conviction, however, rested upon the statute dealing with liability for crimes of another. Minn. St. 609.05 provides in relevant part:

"Subdivision 1. A person is criminally liable for a crime committed by another if he intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime.

\* \* \* \* \*

"Subd. 4. A person liable under this section may be charged with and convicted of the crime although the person who directly committed

it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act."

In reviewing the sufficiency of the evidence to sustain a conviction after trial by jury, this court must determine whether the evidence, direct and circumstantial, viewed most favorably to support a finding of guilty, is sufficient to permit the jury to reach that conclusion. State v. Ellingson, 283 Minn. 208, 167 N. W. (2d) 55. The circumstantial evidence in a criminal case is entitled to as much weight as any other kind of evidence so long as the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of his guilt. State v. Pankratz, 238 Minn. 517, 57 N. W. (2d) 635; State v. Nelson, 285 Minn. 304, 173 N. W. (2d) 349.

There is no claim that appellant actually uttered the forged checks. But the direct and circumstantial evidence certainly establishes beyond a reasonable doubt that he not only intentionally conspired with Mary Ann to commit the crime but actually aided her in its commission. Appellant transported Mary Ann to various places where the forged checks were tendered or cashed. That action alone would be sufficient to sustain the conviction. But there is also circumstantial evidence implicating appellant. Appellant was involved in discussions with Mary Ann as to how much should be paid as downpayment on a television set and as to the purchase of a gun at the Great Northern Trading Post. Moreover, appellant entered two of the places in which Mary Ann was seeking to cash a forged check. He urged her to leave the Meadowmoor Liquor Store when the attempt to cash the forged check was long delayed. When the officers arrived, appellant attempted to leave the area. He gave a false name to the arresting officers, and the remaining forged checks were found under the floor mat on the driver's side of the car which appellant had driven. All of these circumstances are consistent with guilt and are inconsistent with any rational hypothesis except that of guilt.

The conviction is affirmed.

Affirmed.