## STATE v. JOHN WILLIAM KILBURN.

231 N. W. 2d 61.

May 23, 1975—No. 44136.

C. *Paul Jones,* State Public Defender, and *Jack S. Nordby,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *Robert W. Johnson,* County Attorney, and *Edward W. Bearse,* Assistant County Attorney, for respondent.

SCOTT, JUSTICE.

Defendant was found guilty by a district court jury of first-degree murder, Minn. St. 609.185(1), and sentenced by the presiding judge to a term of life imprisonment as provided by law. Defendant contends, on this appeal from the judgment of conviction, that the trial court erred in refusing to permit him to waive his right to trial by jury. We affirm.

Around midnight on April 27, 1972, Mrs. Shirley Harrison of Blaine informed the police that her 15-year-old daughter, Connie, for the first time had not returned home when expected. On April 28, Blaine police detective Jack Sunnarborg, after learning that defendant was the last person with whom Connie had been seen, contacted defendant at his place of employment, a sod field in Blaine. Defendant stated that he had met Connie at a party at the Raygor residence the previous evening and that he had given her a ride home at 10:30 p. m., dropping her off a short distance from her home because she did not want her parents to know that she had been out with defendant.

On the afternoon of April 30 Connie's nude body was discovered in a water-filled ditch on a little-used road in Ham Lake Township. A pathological examination revealed the cause of death as a compound fracture of the skull with deep cerebral lacerations resulting from multiple blows to the head with a straight instrument. Additionally, the examination revealed bruising of the opening of the vagina and some sign of squeezing of the neck. Tests to determine the presence of sperm were inconclusive.

On May 1, 1972, following the discovery of the body, Detective Thomas J. Anderson of the Anoka County sheriff's office, in the company of defendant's friend, Detective Melde of Coon Rapids, interrogated defendant at the Coon Rapids Police Department, defendant voluntarily submitting to questioning. At the start of the session defendant stated that after dropping Connie off he had driven to a secluded spot, fallen asleep, and awakened to find Connie's nude body in his trunk. He stated that he transported her body to where it was found rather than to the police because he did not want to be blamed for her death.

Having obtained this story from defendant but no confession that he actually killed Connie, Detective Anderson, thinking that Melde's presence was inhibiting defendant, asked Melde to leave the room. A short time later defendant confessed to the killing. At first defendant was vague about what had happened but later, after more interrogation, gave a more detailed statement.

Detective Anderson summarized this statement in his testimony at the trial. In substance, he said that defendant had picked the victim up that night at the Raygor residence and asked her if she wanted to go out and see the place where he worked in the sod field. He said they then drove out to the end of the sod field to a spot where he had previously told the detective that he had hit her with the tire jack. He said that he had kissed her, and that the conversation got around to sex. He said that the victim told him she was a virgin, and he said, "Maybe now is the time to change this." He said that he had talked her into having intercourse with him, and inserted his penis inside her vagina. He said when she told him that it hurt and to stop it, that he did. He said that he stood outside the car pulling his pants up, then, he said, "I grabbed her by the neck, I shook her, pushed her up against the car and threw her on the ground." According to Detective Anderson's testimony, defendant said, "At this time she was moaning. * * * I told her to get up. You're not hurt. Get up, you're not hurt." He then told Detective Anderson that he "got scared" that she was going to go home and tell her folks or the

police that he had tried to rape her, and at this time he decided to kill her. He went back to the trunk of the car, unlocked it, got the jack out, came to where she was lying, and started to strike her on the head with the jack. He said after this he decided that he would have to get rid of her, and he loaded her into the trunk of the car and drove to the spot where the body was found.

A large number of exhibits were introduced by the prosecution. Among the more significant were two pieces of Miss Harrison's torn brassiere and other blood-stained clothing; a blood-stained toolbox belonging to defendant; a piece of blue rubber molding shown to be from defendant's car; and defendant's boots, which were of the type which could have made the two prints found near the body. A criminologist testified that the blood stains on the car and on the various other items were of Miss Harrison's blood type, and not defendant's.

Defendant did not testify, but produced four witnesses, former employers and neighbors, who knew defendant and gave their opinion that he was not a violent person.

Defendant, before trial, moved the court for a waiver of a jury trial or, in the alternative, a demand for a change of venue:

"Our basis for a waiver of a jury trial, I think, is readily apparent to the Court. We feel that under the facts and circumstances of this case that it is to the Defendant's best interest to have this case heard by the Court itself and that a determination be made with regard to the facts and evidence presented by the Court as to the charge against the Defendant, which, of course, is First-Degree Murder, or any lesser included charges that may be available to the Defendant. We have discussed this matter, the waiver of a jury, and we understand the law that in the event we should waive a jury, it would have to be in open court and signed by the Defendant after inquiry by the Court; but we have discussed it with the Defendant and with his parents in confidence and feel that it is in his best interest to waive a jury, request a waiver of a jury at this time.

"In the alternative, and we do not have at this time, Your Honor, any clippings or evidence to show that the Defendant's case is prejudiced by having the trial in Anoka County, but we would, of course, call to the Court's attention that John Kilburn is Black, that our chances of having persons of his same ethnic background as members of a jury are practically nil in Anoka County. I know of only two Black couples in Anoka County, three, perhaps. We think this is of paramount importance to him. There was considerable publicity and I think that the newspapers and the television programs carried this story. We do not indicate to the Court that there was reference made to the fact that the victim was White and Mr. Kilburn was Black. We're not making reference to that, but we are saying there was considerable news coverage. We are concerned primarily with the fact that Mr. Kilburn cannot at this time, we think, have a fair trial in the absence of having people of his own ethnic background representing his particular people on the jury. We feel that's not possible in Anoka County. We think it would, perhaps, be possible in the City of Duluth, where there are people that are Black and having at least an opportunity to inquire of persons that are Black, we would have an opportunity to provide him with the type of justice or having his own peers hear his case, which is not given to him in Anoka County."

After hearing arguments on both sides, the court responded as follows:

"In line with State versus Boyce I'm inclined to agree with the County Attorney that in this situation I think the interest of the Defendant would best be served by a jury trial. The Court will deny the Motion to waive a jury.

"As far as the Motion for change of venue, I believe it was one of the cases that I handled in Pine County where the claim was made in regard to a Defendant of Indian origin, that there were no Indians impaneled on the jury, and I believe that case went to the State Supreme Court, and there is no requirement constitutionally either on the state or federal constitution or under any

statute that the ethnic group of a defendant must be represented according to population. It could well be that were we to transfer this case to Duluth, Minnesota that not one member of the panel would be of the Defendant's ethnic background. So if that is the purpose of the move we could well be thwarted having transfered this case all the way across the State, and if there were no members of the Defendant's ethnic group, that would not be a basis to set aside that jury panel and impanel another or call in another jury panel. I believe it's incumbent on the party moving for a change of venue to prove to the Court by exhibits and by evidence that the defendant could not have a fair trial, an impartial trial in this County. Up to this point there has been nothing presented in evidence, no exhibits, no tapes, nothing that would indicate that the Defendant cannot obtain a fair trial here in Anoka County, and unless that should appear on the impaneling of jurors, then, the Court is of the opinion that the Defendant can, and to the Court's utmost ability, and will receive a fair and impartial trial right here in Anoka County."

The following exchange between defendant's counsel and the court then occurred:

"MR. GIBBS: May it please, the Court, I'm assuming, then, from the Court's comments that should it come to the Court's attention during the impaneling of a jury that there is prejudice, that we would be allowed to renew our motion with regard to a change of venue?

"THE COURT: Certainly, if it's impossible to impanel a fair and impartial jury and it's proved to be a fact at the time of jury selection, then, certainly, the motion could be renewed.

"MR. GIBBS: Which would include statements from prospective jurors that they had heard about the case and that pre-trial publicity was such that they could not in fairness hear the Defendant's case, that the Court would then reconsider our motion?

"THE COURT: The pre-trial publicity would have to be of such a nature that it caused them to develop attitudes toward the case which would prevent them from being impartial in the matter.

As far as I have been able to glean from the arguments here, the news reporting of this incident would be ideal, and in line with the comments on the Shepard case, that the news media restricted itself, it did not make editorial comments to my knowledge, did not identify the Defendant here as being a colored boy or man, and didn't recite any of the details of the alleged crime itself. The reporting wasn't of such a nature that it would prejudice the Defendant, unless it appears on voir dire that it may have,. and if it does, at that time you may renew your Motion.

"MR. GIBBS: Fine. That's basically what we're asking, then, Your Honor."

After a finding of guilty, and before sentencing, the defense counsel stated as follows:

"Your Honor, as Defense Counsel for John Kilburn, we feel very strongly that justice was done. We have no objection to the Jury's findings. We feel that throughout this trial and throughout the whole incident that John has been treated well by the Sheriff's Office and by the County Attorney's Office. We know the consequences of a conviction of Murder in the First Degree and it doesn't, then, do us any good to talk about another chance for John. We really believe that this was a two or three minutes of incomprehensible madness, if that's the right way to put it."

The only issue raised in this appeal is, under all the circumstances, did the trial court err in refusing to allow the defendant to waive a jury trial and have the case tried by the court.

The leading United States Supreme Court case dealing with waiver of trial by jury is Singer v. United States, 380 U. S. 24, 85 S. Ct. 783, 13 L. ed. 2d 630 (1965). In that case, the Court held that restrictions on waiver of a jury trial in Rule 23(a), Federal Rules of Criminal Procedure—which permits a defendant to waive a jury trial "with the approval of the court and the consent of the government"—, did not violate the United States Constitution.

Rule 26.01, subd. 1, of the new Minnesota Rules of Criminal

Procedure, to be effective July 1, 1975, provides in part as follows:

"(2) Waiver of Trial by Jury.

"(a) Waiver Generally. The defendant, with the approval of the court may waive jury trial provided he does so personally in writing or orally upon the record in open court, after being advised by the court of his right to trial by jury and after having had an opportunity to consult with counsel.

"(b) Waiver When Prejudicial Publicity. The defendant shall be permitted to waive jury trial whenever it is determined that (a) the waiver has been knowingly and voluntarily made, and (b) there is reason to believe that, as the result of the dissemination of potentially prejudicial material, the waiver is required to assure the likelihood of a fair trial."

The comment accompanying Rule 26 states in part:

"Rule 26.01, subd. 1(2)(a) (Waiver of Trial by Jury Generally) is based upon Fed. R. Cr. P. 23(a), ABA Standards, Trial by Jury, 1.2(b) (Approved Draft, 1968) and continues substantially present Minnesota law (Minn. Stat. § 631.01 (1971)) except that waiver of jury trial by the defendant requires the approval of the court."

It is clear that the procedures provided in Rule 23(a) are not binding upon the states. Further, the Minnesota Rules of Criminal Procedure will not take effect until July 1, 1975. However, we are inclined to agree with the foregoing comment made by the advisory committee [1] and feel ample study was given to protect the constitutional rights of an accused.

We therefore reject defendant's suggestion that we construe Minn. St. 631.01 as creating an absolute right to waive a jury

---

[1] The advisory committee was appointed by the Minnesota Supreme Court pursuant to Minn. St. 480.059, subd. 2, on July 1, 1971.

trial. We previously expressed these views in State v. Hoskins, 292 Minn. 111, 118, 193 N. W. 2d 802, 808 (1972), by stating:

"* * * [T]his court undertook to resolve the question [in Gaulke v. State, 289 Minn. 354, 184 N. W. 2d 599 (1971)] of 'whether Minn. Const. art. 1, § 4, and Minn. St. 631.01 grant a defendant in a criminal case the unconditional right to waive a jury.' We said:

"* * * Considering the historical antecedents of our constitution, it is doubtful that the legislature intended to grant the accused an absolute right of waiver. Although we perceive no intent that the waiver be subject to the consent of the prosecution, it has long been considered to be subject to the approval of the trial court.' 289 Minn. 359, 184 N. W. 2d 602.

In short, the matter of whether a defendant may waive a jury trial was left to the sound discretion of the trial court."

The point was raised, which is tangential in effect, that an impartial trial by jury was unlikely or impossible. It has already been indicated above that no evidence was produced that passions were aroused or that any prejudice would result to deny the availability of impartial jurors. The trial court was apprised only of defendant's statement that there would be prejudice because of the facts and circumstances of the case and the racial characteristics of defendant and the victim. There was no showing of pretrial publicity or prejudice, and, as indicated by defense counsel, no showing of prejudice during the trial or by the jury's actions. The court was not trying to avoid a disagreeable case, as indicated above by his denial of the motion. The jury was questioned thoroughly on these matters, and the defense was satisfied as indicated.

We addressed this problem in Gaulke v. State, 289 Minn. 354, 360, 184 N. W. 2d 599, 602 (1971), when we said:

"A trial court would undoubtedly exercise a sound discretion in declining an application to waive a jury if the court was not

satisfied that the application was defendant's informed and intelligent act. However, the instant case suggests situations in which the withholding of such approval might constitute an abuse of judicial discretion. First, defendant asserted that the crime had been attended with extensive pretrial publicity, impairing selection of an impartial jury, a situation reserved for consideration in Singer v. United States, *supra*. But there was no evidence of such prejudicial publicity and the trial court's findings were adverse to a claim on such a ground."

As in Gaulke, we hold that the trial court did not err or abuse its discretion, and that defendant has not been prejudiced.

Affirmed.

PETERSON, JUSTICE (concurring specially).

I concur in the opinion of Mr. Justice Scott, writing for the majority of the court. I would add this word concerning our decision in State v. Boyce, 284 Minn. 242, 170 N. W. 2d 104 (1969), upon which the trial court relied in stating that "in this situation I think the interest of the Defendant would best be served by a jury trial."

The comparative situation in Boyce and the instant case is such that the order of the trial court denying the request for a nonjury trial is fully understandable. The central ingredient in both cases is the concern that a verdict of guilt or innocence not be infected by latent racial prejudice. The defendants in both cases were black. The deceased persons in both cases were white. The defendants in each case undertook to waive a jury trial; the waiver was allowed in Boyce, denied in the instant case. A difference in the two cases was that in Boyce we had "grave doubts as to defendant's guilt," 284 Minn. 261, 170 N. W. 2d 116, whereas in the instant case there is no such apprehension.

The pointed suggestion in Boyce that the defendant, on a retrial, should "elect to submit the issues to a jury for decision rather than to waive his right to a jury trial" was neither casual nor "random." The first numbered paragraph in the Boyce opin-

ion set the stage in these deliberate words (284 Minn. 253, 170 N. W. 2d 111):

"The determination of the trial court has support in the evidence. Whether this evidence should have been assessed by a jury notwithstanding defendant's request for a nonjury trial, is another matter."

The opinion thereafter concluded, as it had begun, with the quoted statement effectively advising the defendant not to waive a jury trial.

The defendant in Boyce providently accepted the advice of *this court* as to his best interests, for on retrial he was acquitted by a jury. The trial bench may well be confused were we now to hold in this case that a *trial court's* denial of a request to waive a jury trial constitutes an abuse of judicial discretion.[1]

MacLaughlin, Justice (concurring specially).

I concur in the result only because it appears from the record and the statement made by the trial attorney for defendant that defendant received a fair trial; there was little prejudicial pretrial publicity shown; and it appears that the result was just.

However, as to the general principles of law involved, I am in agreement with the dissenting opinion of Mr. Justice Otis. In the absence of substantial reasons why the defendant should not be allowed to waive a jury trial, I would hold that a defendant's knowing and voluntary request to waive a jury should be controlling and that such a request should be granted by the trial court. Further, I believe that this position is consistent with Rule 26.01 of the prospectively adopted Rules of Criminal Procedure.

Otis, Justice (dissenting).

Because I believe there were compelling reasons why the trial

---

[1] I would not retreat from our considered dictum in Gaulke v. State, 289 Minn. 354, 184 N. W. 2d 599 (1971), but this is not, in my view, the extraordinary kind of case that we there contemplated as constitutionally overriding the applicable statute.

court should have decided defendant's guilt or innocence without a jury, I dissent. The question is not whether defendant had an absolute right to waive a jury but whether the trial court exercised its discretion properly in refusing to decide the case without a jury.

The record presents the anomalous situation of a court's insisting that defendant's interests would be better served by a jury trial, while defendant and his counsel protest with equal vigor that defendant's chance for a fair trial is enhanced by waiving a jury. At the outset, therefore, it would appear that the court was preempting the exclusive function of defense counsel in advising what trial tactics would be most beneficial to defendant. I submit that on its face that is a fundamental decision which only the defendant after consulting with counsel should be permitted to make, since it bears directly on the right to an impartial hearing. Had the trial court advanced some compelling reason for refusing to try the case without a jury, the questions presented might be more difficult.

For a full understanding of the issues, it is essential to examine more completely the colloquies between the prosecutor, defense counsel, and the court, referred to in the majority opinion.

On July 7, 1972, defense counsel made the following statement:

"We make these Motions primarily for purposes of protecting Mr. Kilburn's rights. We feel that the facts of the case, the nature of the victim and the Defendant, color-wise, if that's the right way to put it, are such that we are of the opinion that John Kilburn would get a far greater substantial share of justice by having the judge himself hear the case, that our primary argument is that we are reluctant to allow a case of this type to go to a jury where we think substantial old prejudices may arise in the jury's mind without their actually being conscious of those old prejudices being there, and on that basis we have made our Motion. We ask the Court to grant our Motion, in the first instance, for a waiver of a jury trial, and in the alternative to al-

low the case to be transferred or venued to a county of different jurisdiction. Thank you, Your Honor."

After some preliminary discussion, the prosecutor responded as follows:

"Secondly, Your Honor, if I can consider the matter of a waiver of a jury trial. This is a charge of Murder in the First-Degree. I believe that the sole issue that will be presented to the trier of fact will be the element of premeditation. We will have evidence to present on that point and I think the Defendant will probably present evidence to the contrary. Our Minnesota Supreme Court has indicated in State versus Boyce that in important matters of the kind where it gets to be maybe a close issue of determining whose evidence is the correct one, that maybe the Court makes a mistake in allowing the Defendant to waive a jury. We feel that a jury should decide this issue.

"We feel that we have had experience here in Anoka County in the case not too long ago of State versus Ulferts, in which this Court heard the Rasmussen Hearing therein. A jury was waived and I think this Court will recall that *there was quite a hue and cry from the citizenry* as to the waiver of a jury and what the final result of that case was. We don't argue with that final result, Judge, but we feel that, perhaps, the community, the *citizenry would have had more confidence in the administration of justice had the same result been returned by a jury.*" (Italics supplied.)

Later, in the argument to the court, defense counsel concluded with these remarks:

"I would like to just comment for one minute on the County Attorney's representations with regard to State versus Ulferts. In that very case we were convinced that the prejudice by the death of a police officer at the hands of young and alleged irresponsible drunken people was of such a nature that a jury would become enraged, and on that basis, at least, our position

was—and I defended James Ulferts—that the best possible decision and the most substantial justice would result from having a judge hear the case because he was not going to be swayed by this public opinion or hue and cry.

"We don't think there is any question in this case when you have a black man involved with the death of a white girl that they will not be prejudiced. The same type of enragement or hue and cry may come forward in spite of a jury being under oath, and that's our reason for asking for a Court trial or having the Court hear the facts and make its decisions with regard to the law; that is, we are convinced that this is the same type of inflammatory case with different facts, but the same type of thinking or philosophy that went into the Ulferts' decision. As far as we're concerned a jury is going to look at a situation where Mr. Kilburn is black and a white girl, and the Court full well knows that in that type of circumstances they will in our opinion put out of their mind all of the other things that may or may not have gone on out there on that evening and make their decision on the stero-type black boy-white girl type decision and we think that this would result in substantial prejudice to our client, and that's the reason we're prepared at this time to ask the Court and allow the Court to hear the case because we think justice will best be served by not submitting it to a group of people that may be influenced that way, but rather, confine it to the Court, who we feel will not be influenced on that basis. I have nothing further, Your Honor."

In denying the motion to waive a jury, the court stated, among other things, as follows:

"In line with State versus Boyce I'm inclined to agree with the County Attorney that in this situation I think the interest of the Defendant would best be served by a jury trial. The Court will deny the Motion to waive a jury."

It is unfortunate, to say the least, that the prosecutor invited the court to shirk its duty by reminding the court of the adverse

public reaction to the court's acquittal of the defendant in State v. Ulferts, tried in the same district without a jury. For the prosecutor to inject the suggestion that the "hue and cry from the citizenry" is to determine whether a defendant is entitled to be heard by an impartial judge, in my opinion taints the subsequent proceedings, however conscientious the judge may have been. The reliance by the court and prosecutor on State v. Boyce [1] as authority for requiring a jury trial is misplaced. That case had been tried fairly by an impartial judge free from error, as we said, but the question of guilt was extremely close, and in the interests of justice we remanded for a new trial. Our suggestion that the second trial be conducted with a jury had nothing to do with the merits of our decision. It was a casual afterthought prompted by our concern that even the most conscientious judge may suffer from a subconscious reluctance to overrule or second-guess a colleague on the same court who has heard the same evidence. It was to avert that possibility and out of an abundance of caution to guarantee the defendant a trial completely free from any such influence that we suggested he consider a jury trial on the remand.

At the commencement of the trial in the instant case, defendant again renewed his motion to waive a jury and it was again denied. At that time the court repeated his reliance on the Boyce case by stating:

"The Court appreciates Counsel's position and the position of the Defendant on that particular matter. However, in line with the reasoning in State versus Boyce, it appears that the Supreme Court feels the interests of the Defendant are best served by a trial to a jury. The Court appreciates in that case there was an alleged defense of self-defense, which isn't present in this case, apparently."

---

[1] State v. Boyce, 284 Minn. 242, 170 N. W. 2d 104 (1969).

For the reasons I have indicated, it seems apparent that the trial court was misled by our random remark in the Boyce case which the court construed to be a decision that "the interests of the Defendant are best served by a trial to a jury."

Thereafter defense counsel made a final plea to waive a jury by arguing to the court:

"* * * [W]e feel, of course, to the contrary, that the case is of such a nature with the ethnic background of the parties that substantial prejudice will exist, whether or not we're able to show it or not, and that we don't feel that this prejudice would exist were the matter heard by the Court alone."

In response, the court stated:

"* * * [T]hat feeling is not concurred in by the Court. I don't feel there will be prejudice in this case and every effort will be bent in that regard to avoid it."

Notwithstanding the protestations of the trial court that the jurors were not prejudiced, the court immediately questioned the propriety of defense counsel interrogating the jurors on that issue, stating as its reason:

"This is a difficult question because certainly it's going to be difficult at best to obtain any admission from a prospective juror that they are in fact prejudiced against colored people."

As an alternative, the court proposed a question which would excuse any juror who would be influenced for or against a defendant who was black.

This is a classic case where, in my judgment, prejudice against a defendant, whatever his race, color, or ethnic background, is inevitable. The killing of a 15-year-old white girl by an adult black in the course of a sexual encounter is the most inflammatory and volatile set of circumstances imaginable. In my opinion, it is one which requires the judiciary to utilize every legitimate safeguard against the "hue and cry" of an aroused citizenry. In all of Anoka County, the record indicates there are only a hand-

ful of blacks. To me it is wholly unrealistic to believe that the trial court's decision to have a jury trial was in the best interests of this defendant. The only issue was the degree of homicide of which defendant was guilty. In the absence of the court's articulating any purpose for a jury trial other than his belief "that the Supreme Court feels the interests of the Defendant are best served by a trial to a jury," I submit that it was the court's duty to try the matter without a jury.

In dealing with the critically important issues of this case, we are, for practical purposes, writing on a clean slate. Gaulke v. State, 289 Minn. 354, 360, 184 N. W. 2d 599, 603 (1971), sustained the denial of a trial without a jury because the question was not raised until the postconviction proceedings. There, however, by way of dictum, we did stress the principle that in determining the issue of granting a jury trial, the court was obliged to exercise sound discretion.

"We do think that a trial court should not withhold approval of defendant's application for waiver merely because the case is disagreeable."

In Gaulke, we cited with approval People v. Spegal, 5 Ill. 2d 211, 221, 125 N. E. 2d 468, 473, 51 A. L. R. 2d 1337, 1345 (1955); People v. Duchin, 12 N. Y. 2d 351, 239 N. Y. S. 2d 670, 190 N. E. 2d 17 (1963); and People ex rel. Rohrlich v. Follette, 20 N. Y. 2d 297, 282 N. Y. S. 2d 729, 229 N. E. 2d 419 (1967). The Spegal decision, written by Mr. Justice Schaefer, reversed a judgment of conviction because the trial court failed to grant defendant's petition for a trial without a jury. The Duchin and Follette cases in New York, under constitutional and statutory provisions similar to our own, adopted the rule that those provisions are designed for the benefit of the defendant and that—

"* * * the requirement of judicial approval is designed to insure that the defendant's waiver is a knowing and intelligent one and that the discretion of the Trial Judge to deny a defend-

ant's request to waive a jury trial is limited to those cases in which some 'compelling ground arising out of the attainment of the ends of justice' requires that the request be denied." 20 N. Y. 2d 300, 282 N. Y. S. 2d 731, 229 N. E. 2d 421.

Singer v. United States, 380 U. S. 24, 37, 85 S. Ct. 783, 791, 13 L. ed. 2d 630, 639, recognizes that—

"* * * there might be some circumstances where a defendant's reasons for wanting to be tried by a judge alone are so compelling that the Government's insistence on trial by jury would result in the denial to a defendant of an impartial trial."

In that case, however, the only reason given by defendant for waiving a jury trial was to save time. Here, however, the reasons *are* compelling.

Neither Minn. Const. art. 1, § 4, nor Minn. St. 631.01, attaches any conditions to the defendant's right to waive a jury.[2] We have prospectively adopted Rule 26.01, Rules of Criminal Procedure,

---

[2] Minn. Const. art. 1, § 4, provides: "The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy. A jury trial may be waived by the parties in all cases in the manner prescribed by law; and the legislature may provide that the agreement of five-sixths of a jury in a civil action or proceeding, after not less than six hours' deliberation, is a sufficient verdict."

Minn. St. 631.01 provides: "An issue of fact arises upon a plea of not guilty, or upon a plea of former conviction or acquittal of the same offense. Except where defendant waives a jury trial, every issue of fact shall be tried by a jury of the county in which the indictment was found or information filed, unless the action shall have been removed by order of court as provided in sections 627.01 to 627.04. If the defendant shall waive a jury trial, such waiver shall be in writing signed by him in open court after he has been arraigned and has had opportunity to consult with counsel and shall be filed with the clerk. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial. If the charge against the accused be a misdemeanor, the trial may be had in the absence of the defendant, if he shall appear by counsel; but, if it be for a felony or gross misdemeanor, he shall be personally present."

permitting the waiver of a jury trial with the court's approval. With that rule I do not quarrel. I would, however, apply the dictum in Gaulke to which reference has been made, and follow the principles enunciated by the New York court in the Duchin and Follette cases and the rule adopted in A. B. A. Standards for Criminal Justice, Fair Trial and Free Press (Approved Draft, 1968) § 3.3, as follows:

"In those jurisdictions in which the defendant does not have an absolute right to waive a jury in a criminal case, it is recommended that the defendant be permitted to waive whenever it is determined that (1) the waiver has been knowingly and voluntarily made, and (2) there is reason to believe that, as a result of the dissemination of potentially prejudicial material, the waiver is required to increase the likelihood of a fair trial."

The comment to A. B. A. Standards for Criminal Justice, Trial by Jury (Approved Draft, 1968) § 1.2(a), states in part (p. 36):

"Allowing the court to require a jury trial would enable the judge to shirk his duty and avoid the responsibility of deciding serious criminal cases. *In cases which have received much publicity and have aroused the community, the judge may require a jury trial in order to avoid criticism, but it is in just such cases that the need for trial before an impartial judge is especially great. The protection of the court is far less important than the protection of the defendant.*" (Italics supplied.)

In the instant case the defendant's showing that potentially prejudicial material had been disseminated was not strong. Nevertheless, in my opinion, and in accordance with the philosophy of the A. B. A. comment, I would hold that the defendant's decision to waive a jury was well-founded and consequently should govern where the court has assigned no valid countervailing reasons to justify its refusal to waive the jury. Accordingly, I would remand for a new trial.

ROGOSHESKE, JUSTICE (dissenting).

I join my brother Otis and also dissent because I share his views concerning: (1) The underlying basis for our suggestion in State v. Boyce, 284 Minn. 242, 170 N. W. 2d 104 (1969), of a preference for submission to a jury on retrial; (2) our limitations in reviewing the trial judge's denial of defendant's request to waive a jury now rather than at the time it was made; (3) defense counsel's recital of the compelling reasons for defendant's knowledgeable request, especially those peculiar to the likely composition of a jury impaneled in Anoka County; and (4) the reasons expressed by the trial judge for the rejection of defendant's requested waiver. In my opinion, the recorded reasons for rejection neither responsively answered the grounds upon which defendant's request was based nor revealed an adequate understanding or appreciation of the role and function of defense counsel in pursuit of his efforts to adhere to the principles embodied in the A. B. A. Standards cited by my brother Otis which defense counsel, with admirable skill and faithfulness, sought to follow in protecting defendant's legitimate interests, presumably without regard at the time for his personal views of defendant's probable culpability or his subsequent reaction to the fairness of the trial or the propriety of the jury's verdict. However debatable among members of the bench and bar the benefits of jury trials may be, I believe that granting defendant a retrial in this case will do no disservice to the efficient administration of criminal justice by encouraging trial judges to try criminal cases without a jury when requested by an accused with defense counsel's approval.

MR. JUSTICE KNUTSON took no part in the consideration or decision of this case.