**STATE of Minnesota, Respondent,**

v.

**Robert Allen MARSYLA, Appellant.**

**No. 46543.**

Supreme Court of Minnesota.

May 26, 1978.

C. Paul Jones, Public Defender, Stanley Horak, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Keith Brownell, County Atty., Peter Mayrand, Asst. County Atty., Duluth, for respondent.

Heard before PETERSON, SCOTT, and IRVINE, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal from a judgment of conviction of first degree murder pursuant to Minn.St. 609.185(1), wherein it is claimed that there was insufficient evidence of premeditation and intent to kill, and that the trial court erred in refusing to grant a mistrial after the state introduced evidence of prior misconduct which was not covered in its *Spreigl* notice. We affirm.

The grand jury of St. Louis County had indicted defendant in three separate indictments [1] for first degree murder. The county attorney requested the trial court to consolidate all three for trial, reasoning as follows in the affidavit in support of his motion:

"8. Your Affiant feels most strongly that it would be an absolute miscarriage of justice to allow the trial proceedings to continue in the manner set by this Court Order of September 18, 1975; that inasmuch as Bruce Nelson saw at least two members of his family, including his mother, killed by the defendant, and inasmuch as witness Gail Nelson had her arm shot off and was after the shooting, but before the arrest of the Defendant by Sheriff's Deputies, raped by the Defendant, it is clear that to put either or both of these witnesses through more than one Court proceeding would be most unfair to either or both of these witnesses and certainly to the system of justice."

---

1. This crime was committed before the adoption of the new Rules of Criminal Procedure wherein it is made more clear that separate charges may be consolidated. Rule 17.03, subd. 4, Rules of Criminal Procedure.

This motion was denied, and a subsequent request to this court for a writ of prohibition was discouraged on the basis that it would be unlikely for such an order of a district court to be overruled as an abuse of discretion by use of this extraordinary writ.

At the time of the incident which resulted in this conviction, defendant, aged 30, was unemployed and living with his father on a farm near Forbes, Minnesota. They had temporarily taken in a family with whom they had been friends for several years, the Nelsons, who needed housing for a few weeks. This family consisted of Viola Nelson, aged approximately 50, and her four children: Gail, 19; Brian, 16; Bruce, 14; and Jimmy, 12. Defendant had been a drinking companion of Viola Nelson's for about 10 years, and had had a sexual relationship with her for 6 or 7 years.

On November 20, 1974, Gail, Bruce, and Jimmy went to school while Brian, Viola, and defendant stayed home and drank peppermint schnapps and beer. Beginning at about 10 a. m. they drank a half-pint of brandy, two pints of peppermint schnapps, and three six-packs of beer. Defendant's father, Eino Marsyla, stopped in at about 3 p. m. and found them "drunk or drinking." He was disturbed because defendant's brother was in the hospital in critical condition and gave defendant and Viola a lecture about their drinking at such a critical time.

Gail came home from the community college at about 5 p. m. Bruce, who had come home with Jimmy at about 4 p. m., told her about the drinking and she decided to pack a suitcase and leave the farm. She and Brian had a fight over some money she wanted to take with her, during which she bit Brian on the arm. Defendant intervened, and he and Brian pushed Gail. Defendant at this time was considered "drunk" by Gail, "but not as drunk as I have seen him," and Bruce testified that

defendant's physical movements and temper were normal.

Bruce went upstairs to read. Jimmy came up shortly thereafter and told him that defendant had a gun. They went downstairs, but before they reached the bottom of the staircase, Bruce heard a shot and "[k]ind of a crashing noise." He saw Brian lying dead on the floor in the dining room.[2] Defendant made Bruce and Jimmy move the body to the doorway between the kitchen and the dining room.

Gail, who had been in her bedroom packing, came out when she heard the shot. Defendant was holding a gun later identified as a Model 94 30.30 Winchester deer rifle. He was pointing the gun back and forth and fired a shot past the table where Gail and her mother were sitting, into the wall. According to Gail, Viola then said, " 'Now that you killed Brian, you might as well kill all of us,' " to which defendant replied, " 'Well, I intend to.' " He then shot Gail in the left arm, and shot and killed Viola. When Bruce and Jimmy ran, with Bruce in the lead, defendant shot and killed Jimmy. Bruce was able to hide under a bed and then run to the neighbors for help.

Gail testified that defendant then "made me take my clothes off" and "raped me."[3] Defendant was apprehended a few minutes later in Gail's bedroom, with his belt unbuckled and his zipper down. About 1½ hours later defendant's blood alcohol content was tested and found to be .20. At trial, a psychiatrist testified that defendant is an alcoholic and that he was intoxicated at the time of the incident. There was conflicting expert testimony as to the extent of alcohol-induced amnesia suffered by defendant following this incident.

On December 12, 1974, defendant was indicted, and trial for the death of Brian Nelson began on October 8, 1975, defendant

---

**2.** Brian had been shot once in the back of the neck, incurring a wound which caused instantaneous or almost instantaneous death.

**3.** Corroborative evidence includes the fact that the quilt on Gail's bed had a large bloodstain where her left arm would have been had she lain thereon her back; defendant's sweatshirt

was stained on the front of the right shoulder by blood which matched Gail's in three tested respects. Her panties were found by the bed. When the quilt and panties were tested for the presence of semen, however, the results were negative.

having waived his right to a speedy trial.[4] The jury returned a verdict of guilty of first degree murder.

The issues this case presents are as follows:

(1) Was the evidence of intent to kill and of premeditation sufficient to support the verdict of guilty of first degree murder?

(2) Did the trial court err in denying defendant's motion for a mistrial following testimony as to prior misconduct?

(3) Did the trial court err in receiving evidence of the sexual assault on Gail?

1. Minn.St. 609.18 and 609.185, which are applicable in determining whether defendant committed first degree murder, state in part:

"[609.18] For the purposes of sections 609.185 and 609.19, 'premeditation' means to consider, plan or prepare for, or determine to commit, the act referred to prior to its commission."

"[609.185] Whoever does either of the following is guilty of murder in the first degree and shall be sentenced to imprisonment for life:

"(1) Causes the death of a human being with premeditation and with intent to effect the death of such person or of another."

■ This court has held that intent to kill and premeditation are both subjective elements which cannot be proved directly; they are inferred from objective evidence of the circumstances of a killing. *State v. Gavle*, 234 Minn. 186, 48 N.W.2d 44 (1951). This task of inference is for the jury. As we held in *State v. Norgaard*, 272 Minn. 48, 52, 136 N.W.2d 628, 632 (1965): " * * * If the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that defendant was proven guilty of the offense charged, a reviewing court will not disturb its verdict." See, also, *State v. Taylor*, 258 N.W.2d 615 (Minn.1977); *State v. Maloney*, 295 Minn. 262, 204 N.W.2d 202 (1973). The reviewing court must assume the jury chose to believe the witnesses whose testimony supports the verdict. The jury's responsibility is qualified, however, by the principle that to sustain a conviction " * * * the sum of the inferences reasonably to be drawn from the circumstances [must be] consistent with guilt and inconsistent with any rational belief of innocence." *State v. Witte*, 280 Minn. 116, 118, 158 N.W.2d 266, 268 (1968).

■ With respect to the defense of intoxication in the present case, there is ample evidence to support a jury finding that defendant was not so intoxicated as to be unable to form an intent to kill, or to premeditate. His statement that he "intended" to kill the rest of the family, testified to by Gail, indicates that he was capable of forming the requisite intent. Moreover, there was evidence that on a prior occasion defendant was apprehended with a blood-alcohol reading of .37 while driving a car, nearly twice his blood-alcohol content after the shootings.

The question of intent and premeditation is stated well in 9 McCarr, Minnesota Practice, Criminal Law and Procedure, § 1521, p. 187:

"All the time needed for premeditation or deliberation is that required to form the intent to kill. Thus, the following instruction was sustained in *State v. Prolow* [98 Minn. 459, 461, 108 N.W. 873, 874 (1906)]:

"The 'premeditation may be formed at any time, moment or instant before the killing. Premeditation means thought of beforehand for any length of time, no matter how short. There need be no appreciable space of time between the intention of killing and the act of killing. They may be as instantaneous as the successive thoughts of the mind.'

4. Gail was being treated by the Range Mental Health Center and her appearance as a witness was delayed pending clearance by the doctors.

"In *State v. Hyleck* [286 Minn. 126, 140, 175 N.W.2d 163, 172, certiorari denied, 399 U.S. 932, 90 S.Ct. 2267, 26 L.Ed.2d 803 (1970)] the court said: 'Premeditation is not a coefficient of time and can never be presumed from a given state of facts.'

"In *State v. Keaton* [258 Minn. 359, 363, 104 N.W.2d 650, 654, 86 A.L.R. 649, 653 (1960)], the Court related: 'Premeditated design denotes pre-existing reflection and deliberation encompassing more than the mere intent to kill.' "

The defendant attempts to separate Brian's killing from all the surrounding circumstances. To this the state more than adequately replies:

"* * * After [defendant] became involved, the argument between Brian and Gail apparently ended, Gail returned to her packing and Brian and [defendant] left her room. It was at this time that [defendant] got the 30.30 rifle and then went to the kitchen to get some shells. This took place quickly, since before the first shot was fired there was time for Jimmy to see [defendant] with the rifle, run upstairs to tell Bruce, and with Bruce started to come down the stairs. Gail remembers that the next thing to happen after [defendant] and Brian left her was that she heard a shot fired. After [defendant] fully loaded the rifle, chambered a live round and shot Brian in the back of the head, he told Jimmy and Bruce to drag the body of Brian into the kitchen and then sit in the living room—which they did. Having seen this, Viola Nelson said, 'Now that you killed Brian, you might as well kill all of us.' To this [defendant] replied, 'Well, I intend to.' He then proceeded to try. He chambered another live round, shot Gail, chambered another live round and killed Viola, chambered another live round and shot Jimmy in the back as he and Bruce fled the room. At this point, Bruce, who had been just in front of Jimmy as they sought to flee, was able to escape by hiding under a bed while [defendant] ran upstairs looking for him. Bruce summoned the authorities. Finding that Bruce had made good his escape, [defend-ant] forced Gail to go outside to call to Bruce to return. Failing to get Bruce to return, [defendant] forced Gail to return to her bedroom, where he sexually assaulted her. While [defendant] and Gail were still lying on her bed the police arrived. [Defendant] pulled up his pants, but was unable to zip them or buckle his belt before sheriff's deputies entered the room and took him into custody.

"Clearly the evidence before the jury was more than sufficient to justify its verdict of guilty. Indeed, the proof of [defendant's] cocking, aiming and firing the gun so accurately as to hit Brian Nelson squarely in the back of the neck was alone sufficient to establish premeditation and intent."

With this the jury apparently agreed. The totality of circumstances must always be considered by the trial court, the jury, and this court, in making a determination of intent and premeditation. Chosen facts cannot be isolated for the purposes of this test. The jury had sufficient evidence to support its verdict.

2. On direct examination, Gail testified as follows with respect to a prior incident:

"Q Was there ever another occasion when you had trouble with Mr. Marsyla when he was in your opinion drunk?

"A Yes.

"Q How long was that previous to this incident?

"A About three years ago.

* * * * * *

"Q Where were you at that time?

"A At my grandmother's house.

"Q And your grandmother's house is located where?

"A Forbes.

"Q Who was present?

"A Me and my grandmother—

* * * * * *

"Q Who else was present besides you and your grandmother, do you remember?

"A No.

"Q Did you have a visitor during the night?

"A  Yes.

"Q  Do you remember what time it was?

"A  No.

"Q  Had you gone to bed yet or were you still up?

"A  We were still up.

"Q  Who was that visitor?

"A  Marsyla.

"Q  What did he want?

"A  He tried to break in.

"Q  What did you do?

"A  She called the sheriff."

This testimony came in response to a series of questions concerning Gail's prior observations of defendant while he was drunk. Defendant's counsel objected to this testimony and moved for a mistrial. The objection was sustained and the jury cautioned to ignore the testimony. The mistrial was denied. The court instructed the jury:

"Ladies and gentlemen of the Jury, I have sustained objection to the previous answer that was given by this witness, and you are instructed to disregard it in its entirety, any testimony relating to an alleged attempt to break into the witness's grandmother's house and her calling the sheriffs. The State does not claim that the defendant committed a criminal act on that occasion, and that he was even charged with a crime. In fact, the defendant was not charged. It would be improper for you to be permitted to infer otherwise, and you are categorically instructed to disregard the same in its entirety, and it is ordered to be stricken."

The claim that this testimony should have been noticed in advance under *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965), is questionable. Defense counsel in his opening statement indicated his intention to go into defendant's drinking history as one of his defenses, as well as the relationships with his victims. Since this testimony involved such a relationship it may very well have been admissible irrespective of *Spreigl*. In *State v. Boyce*, 284 Minn. 242, 260, 170 N.W.2d 104, 115 (1969), we stated:

"We did not intend by our decision in *State v. Spreigl* * * * to require a 'Spreigl notice' as a condition to the admissibility of evidence bearing directly on the history of the relationship existing between one accused of murder and the victim."

Defendant contends that this testimony was inadmissible as to prior misconduct; we, however, do not feel that the questioning went far enough to prejudice defendant and thereby constitute reversible error, especially when coupled with the trial court's clear admonition.

3. Defendant argues that proof that he "raped" Gail was not clear and convincing because there was no testimony as to penetration, an essential element of criminal sexual conduct in the first degree. Minn.St. 609.342. Gail was describing all the actions of defendant during the commission of these crimes when she used the term "rape." All this evidence was admissible as part of the totality of the circumstances of the crimes. But in any event, criminal sexual conduct in the second degree does not require penetration, and there was clear and convincing evidence of that crime. See, Minn.St. 609.343. The two offenses are equally probative of defendant's ability to form intent. Under the circumstances, the fact that penetration was not clearly shown was not prejudicial.

Affirmed.