STATE of Minnesota, Respondent,

v.

Christopher Jessie LINDER, Appellant.

No. 49946.

Supreme Court of Minnesota.

May 1, 1981.

C. Paul Jones, Public Defender, Mark Anderson, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Robert Johnson, County Atty., Robert Stanich, Asst. County Atty., Anoka, for respondent.

Heard before SHERAN, C. J., and OTIS and PETERSON, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

In a bifurcated jury trial, defendant was found guilty of first-degree murder. He appeals from the judgment of conviction contending that (1) his motion to waive jury trial should have been granted, (2) there was insufficient evidence to support the

jury's finding that he was guilty of first-degree murder, and (3) the evidence mandated a verdict of not guilty by reason of mental illness. We affirm.

On July 15, 1979, the victim, a 68-year-old widow, was beaten in her home in Anoka, Minnesota, by defendant, an escapee from the Anoka State Hospital, and died 2 days later. Defendant, who had a history of mental illness and antisocial behavior dating back to his childhood, had been committed to the Anoka State Hospital on April 7, 1976, after being diagnosed paranoid schizophrenic.

On the evening of July 14, 1976, defendant waited in the hospital until a staff technician left his keys unattended; defendant took the keys and escaped from the hospital into an open field that lies between the hospital and the residential neighborhood in which the victim lived. He passed the night in a shed behind the victim's home, and the following morning he broke into the home to find food, clothing, and money for his escape and there subdued the victim by hitting her repeatedly about the head with a length of pipe until she lost consciousness.

Police arrived after a neighbor alerted them to defendant's presence in the home. They found the victim lying in the bedroom in a pool of blood and defendant in the kitchen drinking heavily. Defendant was arrested at the scene, and the victim was taken to a hospital where she died on July 17, 1976, never regaining consciousness. Following her death, defendant was charged with first-degree murder.

In response to the charge, defendant interposed alternative pleas of not guilty and not guilty by reason of mental illness and elected to bifurcate his trial pursuant to Minn.R.Crim. P. 20.02, subd. 6(2)(1).[1] Defendant also moved to waive jury trial. The trial court denied this motion but granted an alternative motion for a change of venue from Anoka to Washington County, where trial commenced on November 20, 1978. In the first stage of the trial, the jury found the elements of the charged offense had been proved; in the second stage, the jury found defendant guilty, rejecting his plea of mental illness. Upon denial of defendant's motion for a new trial or judgment of acquittal notwithstanding the verdict, defendant brought this appeal.

1. The first issue raised is whether the trial court abused its discretion in refusing to allow defendant to waive jury trial. Minn.R.Crim. P. 26.01, subd. 1(2), provides:

(2) *Waiver of Trial by Jury.*

(a) Waiver Generally. The defendant, with the approval of the court may waive jury trial provided he does so personally in writing or orally upon the record in open court, after being advised by the court of his right to trial by jury and after having had an opportunity to consult with counsel.

(b) Waiver When Prejudicial Publicity. The defendant shall be permitted to waive jury trial whenever it is determined that (a) the waiver has been knowingly and voluntarily made, and (b) there is reason to believe that, as the result of the dissemination of potentially prejudicial material, the waiver is required to assure the likelihood of a fair trial.

While defendant acknowledges that he does not have an absolute right to waive jury trial, *State v. Hoskins*, 292 Minn. 111, 118, 193 N.W.2d 802, 808 (1972); *Gaulke v. State*, 289 Minn. 354, 359, 184 N.W.2d 599, 602 (1971), he contends that subsection (a) of the rule requires the trial court to accept the waiver unless strong countervailing reasons exist for refusal. However, in *Hoskins* and *Gaulke* and in *State v. Kilburn*, 304 Minn. 217, 224–25, 231 N.W.2d 61, 65 (1975), we held the question whether a defendant may waive jury trial is left to the sound discretion of the trial court. The burden is

---

1. A bifurcated trial is held in two stages. In the first stage, the jury considers the defendant's plea of not guilty and determines whether the elements of the offense charged have been proved. If the defendant is found guilty, then the jury in the second stage of the trial considers the defendant's plea of not guilty by reason of mental illness and determines whether defendant should be excused from criminal liability under Minn.Stat. § 611.026 (1980).

upon defendant to show that refusal of the waiver was so unreasonable as to constitute an abuse of discretion.

■ In explaining its decision to refuse the waiver, the trial court in this case expressed a legitimate concern for defendant's right to a fair trial. Each judge in the district had been involved in defendant's case in some way, particularly with respect to reports of defendant's mental condition, which would be at issue in the second stage of the trial, and with respect to several confessions that had been suppressed.[2] The trial court concluded it would be inadvisable for any of the judges, including himself, to decide the case. This reasoning does not reflect an abuse of discretion.

■ Defendant argues that if he is not entitled to waiver of jury trial under subsection (a), subsection (b) compels acceptance of the waiver because of prejudicial publicity surrounding the murder. In Anoka, the case stirred public outcry against the state hospital. That outcry was rekindled in 1978, with the arrival at the hospital of another patient who in a widely publicized trial had been acquitted by reason of mental illness of the murder of her former boyfriend's wife.

Despite the undisputed prejudicial publicity, however, we agree with the trial court that because of the change of venue from Anoka to Washington County a waiver was not "required to assure the likelihood of a fair trial." There was no evidence that publicity surrounding the murder affected areas beyond Anoka County, and there is no indication that defendant could not or did not receive a fair trial before the Washington County jury. We hold that defendant was not as a matter of right entitled to waive jury trial and that the court's denial of his motion should be upheld.

2. The next issue raised by defendant is whether there was sufficient evidence of premeditation presented in stage one of the trial to warrant the conviction of first-degree murder.

Minn.Stat. § 609.185 (1980) defines first-degree murder as follows: "Whoever does either of the following is guilty of murder in the first degree and shall be sentenced to imprisonment for life: (1) Causes the death of a human being with premeditation and with intent to effect the death of such person * * *."

Section 609.18 defines premeditation as to "consider, plan or prepare for, or determine to commit, the act referred to prior to its commission." The advisory committee comment to these sections states:

> In 1959, Minn.St. § 619.08 ,was revised so that murder in the second degree, with certain exceptions, no longer carries a penalty of life imprisonment. With this change, substantial consequences in terms of possible punishment now turn on the meaning of the word "premeditation." The definition in recommended § 609.18 undertakes to give this distinction some substance. Heretofore it has been largely without meaning. All the time presently needed for premeditation or deliberation is that required to form the intent to kill.

In examining this comment, we concluded in *State v. Swain*, 269 N.W.2d 707, 713 n. 8 (Minn.1978), that "the legislature intended some greater distinctions between first and second degree murder than we have heretofore recognized." "Premeditation denotes a pre-existing reflection and deliberation involving more than a mere intent to kill." *State v. Lee*, 282 N.W.2d 896, 901 (Minn. 1979). *State v. Keaton*, 258 Minn. 359, 363, 104 N.W.2d 650, 654 (1960). Nevertheless,

---

**2.** Defendant's initial court appearances were made before Judge Carroll Larson, who ordered psychiatric evaluation. After the evaluation, Judge John Dablow found defendant incompetent to stand trial. Defendant was subsequently found to be mentally ill and dangerous and was committed by Judge Spencer Sokolowski to the Minnesota State Security Hospital at St. Peter. Judge Sokolowski also authorized elec-

troshock therapy for defendant. On February 13, 1978, a year and a half after the death of the victim, Judge Dablow found defendant competent to stand trial but suppressed the confessions defendant had made to police at the time of his arrest. We upheld the suppression of the confessions in *State v. Linder*, 268 N.W.2d 734 (Minn.1978).

"[e]xtensive planning and calculated deliberation need not be shown by the prosecution. The requisite 'plan' to commit first-degree murder can be formulated virtually instantaneously by a killer." *State v. Neumann*, 262 N.W.2d 426, 430 (Minn.1978). *Accord, Bangert v. State*, 282 N.W.2d 540, 544 (Minn.1979).

■ Defendant argues that evidence of multiple blows and the presence of blood in various rooms of the home is insufficient to show premeditation. In *State v. Walker*, 306 Minn. 105, 235 N.W.2d 810 (1975), *cert. denied*, 426 U.S. 950, 96 S.Ct. 3172, 49 L.Ed.2d 1187 (1976), we held that the length and severity of a beating could indicate premeditation. However, in *State v. Swain*, 269 N.W.2d 707, 714 (1978), we held that death by a series of blows, by itself, was insufficient to support a finding of premeditation. A finding of premeditation must be justified by a totality of the circumstances. *State v. McCullum*, 289 N.W.2d 89 (Minn.1979).

■ That the evidence of premeditation is circumstantial does not make it insufficient. Premeditation is a state of mind; it can generally only be inferred from circumstantial evidence. *State v. McCullum*, 289 N.W.2d at 91; *State v. Lee*, 282 N.W.2d at 901; *Bangert v. State*, 282 N.W.2d at 544; *State v. Merrill*, 274 N.W.2d 99, 112 (Minn. 1978); *State v. Marsyla*, 269 N.W.2d 2, 5 (Minn.1978). Consequently, circumstantial evidence may form the basis of a jury determination of premeditation. As we noted in *State v. Morgan*, 290 Minn. 558, 188 N.W.2d 917 (1971): "The circumstantial evidence in a criminal case is entitled to as much weight as any other kind of evidence so long as the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of his guilt." *Id.* at 561, 188 N.W.2d at 919 (citations omitted).

■ A jury is in the best position to evaluate the circumstantial evidence surrounding a murder. Therefore, a jury's verdict must be given due deference. *State v. McCullum*, 289 N.W.2d at 91. In *State v. Oevering*, 268 N.W.2d 68 (Minn.1978), this court stated:

> When reviewing a jury verdict, we must examine the evidence in the light most favorable to the verdict and assume that the jury disbelieved any testimony which conflicts with the result it reached. If on the basis of the evidence in the record the jury could reasonably have found as it did, we may not upset that conclusion.

*Id.* at 71 (citations omitted).

Application of the above principles to the instant case shows that the jury verdict was supported by the evidence. In reaching its decision, the jury may have relied on any of the following evidence:[3] (1) the victim had suffered multiple blows at the hands of defendant; (2) the victim's blood was found in several rooms of her home; (3) the lead pipe used to inflict the blows was probably not already in the home but was brought in from outside; (4) the victim could be observed from the shed behind her home, and there was evidence that defendant had been in the shed; and (5) the home was the only one of six homes in the immediate area with but one occupant. The totality of this circumstantial evidence is sufficient to support the jury's verdict. Accordingly, we refuse to reduce defendant's conviction from first- to second-degree murder. This holding is consistent with our previous decisions in *State v. McCullum*, 289 N.W.2d 89 (Minn.1979); *Bangert v. State*, 282 N.W.2d 540 (Minn.1979); *State v. Merrill*, 274 N.W.2d 99 (Minn.1978); and *State v. Walker*, 306 Minn. 105, 235 N.W.2d 810 (1975), *cert. denied*, 426 U.S. 950, 96 S.Ct. 3172, 49 L.Ed.2d 1187 (1976).

---

**3.** Defendant did not testify at either stage of the bifurcated trial. Although he described his thoughts and conduct with respect to the murder to the examining psychiatrists, they testified only in stage two of the trial. Their testimony was accordingly not available to the jury at stage one of the trial, the stage at which the jury made its findings on the elements of first-degree murder. Notwithstanding the psychiatric evidence otherwise relevant to the issue of premeditation, we have confined our consideration to the evidence presented to the jury in stage one.

3. Finally, defendant contends that, as a matter of law, he should have been acquitted by reason of mental illness. The standard for acquittal by reason of mental illness is expressed in Minn.Stat. § 611.026 (1980),[4] which provides: "No person shall * * * be excused from criminal liability except upon proof that at the time of committing the alleged criminal act he was laboring under such a defect of reason, from one of these causes, as not to know the nature of his act, or that it was wrong."

Section 611.025 provides that "in every criminal proceeding, a person is presumed to be responsible for his acts and the burden of rebutting such presumption is upon him."

■ The burden is upon the defendant to prove this defense by a preponderance of the evidence. *State v. Bott*, 310 Minn. 331, 335, 246 N.W.2d 48, 52 (1976). Substantial deference is accorded the jury's evaluation of the testimony on mental illness, and we have often said that the jury is the sole judge of the believability and weight of the testimony. *See, e. g., State v. Larson*, 281 N.W.2d 481, 487 (Minn.1979); *State v. Hoskins*, 292 Minn. 111, 137–38, 193 N.W.2d 802, 819 (1972). The fact that defendant is undisputedly mentally ill does not alone establish his defense. He is excused from responsibility only if his illness caused him not to know the nature of his act or that it was wrong. *State v. Carpenter*, 282 N.W.2d 910, 914 (Minn.1979); *State v. Knox*, 311 Minn. 314, 323, 250 N.W.2d 147, 154 (1976); *State v. Bott*, 310 Minn. at 334, 246 N.W.2d at 51.

■ Three psychiatrists testified in stage two of defendant's trial: Dr. William Erickson, the court-appointed psychiatrist; Dr. Carl Schwartz, defendant's witness; and Dr. Dennis Philander, the state's witness. Schwartz and Erickson both testified defendant's mental illness caused such a defect of reason that he did not know it was wrong to kill the victim. Philander, on the other hand, agreed that defendant was mentally ill but concluded that the illness did not in this instance prevent him from recognizing his act was wrong.

In *Hoskins*, we upheld the jury's rejection of a mental illness defense despite the fact that the only expert witness testified defendant's illness met the *M'Naghten* standard. Here there was testimony on both sides, with full cross-examination and ample basis upon which the jury could decide whose testimony to credit. The jury was entirely justified in rejecting the evidence that defendant's mental illness prevented him from understanding the nature of his act and that it was wrong.

Affirmed.

OTIS, Justice (dissenting).

Rule 26.01, subd. 1(2)(b) of our rules of criminal procedure, provides that a defendant *shall* be permitted to waive a jury trial whenever it is determined that he does so knowingly and voluntarily, and there is reason to believe that, as a result of the dissemination of potentially prejudicial material, the waiver is required to assure the likelihood of a fair trial.

The majority shifts the burden upon defendant to show that the court's refusal to permit a waiver was unreasonable, which I find to be at odds with fundamental fairness. In my opinion it is the duty of the trial court to accept the waiver unless the court, in exercising its discretion, spells out with some specificity valid reasons why the interests of justice require a jury trial.

Here the only justification advanced by the court was *first*, that because mental illness was a defense, there is some question in the court's mind as to whether the defendant could knowingly and intelligently waive a jury; and *second*, that because the defendant had been "in and out of court for a matter of a year and a half or two years" all of the judges felt they knew him; and *third*, that mental illness was a "crucial issue," a "very important factor," which the court had "a preference" be decided by a jury rather than by the court.

The rule was first adopted in Minnesota in *State v. Gut*, 13 Minn. 341 (Gil. 315) (1868), and enacted into statute in 1885.

---

4. This statute is based on the *M'Naghten* rule, first announced in *Daniel M'Naghten's Case*, 10 Clark & Finnelly 200, 8 Eng.Rep. 718 (1843).

It seems logical to assume that if defendant was incompetent to waive a jury, he was likewise incompetent to defend himself. Nevertheless on February 13, 1978, the court found him competent to proceed and on November 20, 1978, the trial began.

As to the court's intimating that the pretrial hearings may have adversely influenced them to the extent that it would be inappropriate for them to decide the case, such exposure if prejudicial should also have disqualified those judges from presiding at the trial by jury. "[W]hatever considerations would make it improper for a judge to try the case without a jury would also make it improper for him to try the case with a jury." *Gaulke v. State*, 289 Minn. 354, 361, 184 N.W.2d 599, 603 (1971).

Finally, the fact that mental illness was not only a crucial issue, but for practical purposes the only issue, was a compelling reason why the court should have honored the request to waive a jury, particularly where the state had no objection. Yet the court assigned as its reason, without further explication, only a "preference" to have a jury decide that issue.[1]

What constitutes "mental illness" as a defense in a criminal case is one of the most complex, difficult, and troublesome questions of law and fact which the legislature and the courts must confront. The bench and bar have for years been struggling with the problem of defining a comprehensible and rational rule for the guidance of factfinders in such cases. Determining the criminal responsibility of psychopathic offenders often draws on the experience and training of the medical profession, the legal profession, sociologists, and theologians. It is an inexact science to say the least. To expect twelve laypersons, without any particular exposure to these disciplines to better understand, weigh, and assess conflicting testimony of so-called experts is to blind ourselves to reality. While members of the judiciary profess no prescience or infallibility in these fields, it is only reasonable to assume that trial judges by education and experience are more likely to have an understanding and grasp of what is relevant than do laypersons.

The defendant in this case was a seriously irrational mental patient, dangerous to himself and to society. Twice he had attempted suicide. He was paranoid and schizophrenic, believing his custodians were bent on murdering him by torture. When he escaped the Anoka State Hospital, he broke into the nearby home of a slightly-built 68-year-old widow whom he apparently beat to death with a metal pipe in a bloody and brutal manner.

Public outrage was such that one thousand local residents signed a petition to have the Anoka State Hospital closed. Although venue was changed to Washington County, it is not correct to say there was no publicity beyond Anoka County. There was considerable coverage of the details of the crime in widely circulated metropolitan papers.

This is precisely the kind of case where judges should do their duty "unswayed by partisan interests, public clamor, or fear of criticism" as the judicial canons require,[2] absent "substantial reasons why the defendant should not be allowed to waive a jury trial." *State v. Kilburn*, 304 Minn. 217, 227, 231 N.W.2d 61, 66 (1975) (MacLaughlin, J. concurring).

> In cases which have received much publicity and have aroused the community, * * * the need for trial before an impartial judge is especially great.

ABA Project on Minimum Standards For Criminal Justice, Standards Relating To Trial By Jury § 1.2(a)(3)(d), at 36.

Where, as here, the trial court has failed to suggest any substantial ground for denying defendant's request to waive a jury, the interests of justice compel a new trial to vindicate his rights. 60 Minn.L.Rev. 759 (1976).

WAHL, Justice (dissenting).

I join in the dissent of Justice Otis.

---

1. 160 Minn.L.Rev. 759, 768 (1976).

2. Minn. Code of Judicial Conduct, Canon 3(A)(1).