**STATE of Minnesota, Respondent,**

v.

**Glen R. HOLSCHER, Appellant.**

**No. CX–87–983.**

Court of Appeals of Minnesota.

Jan. 5, 1988.

Review Denied March 18, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Minneapolis, for respondent.

Paul Engh, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by HUSPENI, P.J., and PARKER and LOMMEN, JJ., with oral argument waived.

## OPINION

A. Paul LOMMEN,* Judge.

Appellant, Glenn R. Holscher, was convicted by a jury of kidnapping in violation of Minn.Stat. § 609.25, subds. 1(3), 2(1) (1986); two counts of criminal sexual conduct in the second degree in violation of Minn.Stat. § 609.343, subds. 1(c), 1(d); false imprisonment in violation of Minn. Stat. § 609.255, subd. 2 (1986); and terroristic threats in violation of Minn.Stat. § 609.713, subd. 1 (1986). On appeal, appellant claims (1) he was denied effective assistance of counsel because his counsel labored under an impermissible conflict of interest; (2) he was denied a fair trial because comments by a witness and the prosecuting attorney were improperly allowed; (3) he was denied a fair trial because certain evidence allegedly unconnected to the offenses charged was improperly admitted; (4) the trial court's *ex parte* communication with the jurors was not harmless error; and (5) the trial court's imposition of the

* Acting as judge of the Court of Appeals by ap-

statutory maximum sentence for second degree criminal sexual conduct was improper. We affirm.

## FACTS

Appellant's convictions arose on the night of October 24, 1986, when appellant bound, threatened death, and sexually assaulted the victim in the back of his van. Earlier that night, appellant had hired the victim to engage in an act of prostitution.

The victim testified when she began to prepare for the act, appellant suddenly punched her in the mouth. As she was picking herself up, appellant flipped her onto her stomach and bound her hands behind her with handcuffs. She began to scream and kick out at appellant. He then placed the victim's left ankle in a pulley-like device that was constructed of fish line and attached to the side and ceiling of the van. A gag constructed of a red rubber ball attached to a leather thong was then shoved into her mouth. She managed to keep spitting the gag out so she could continue to yell for help throughout the attack. The victim was then stripped of all her clothes, except for her bra, which was pulled up around her neck, and repeatedly beaten with a leather strap or belt across the buttocks. She was also beaten in the face and about the head. Her attempts to protect herself and pleas to stop the beating were met with more physical and verbal abuse, as well as threats of death with a gun. The attack lasted approximately 25 minutes until the arrival of police, who were contacted by residents in the area.

Minneapolis police officers David Rumpza and Gregory Zipoy testified that when they arrived on the scene they observed appellant with his pants down on top of the victim. Rumpza pulled appellant from the van and observed the victim was handcuffed, her mouth bloody and the gag and bra hanging around her neck. She was extremely frightened, almost hysterical.

At the hospital, Dr. Mary K. McCulloch examined the victim for injuries. McCul-

pointment pursuant to Minn. Const. art. 6, § 2.

loch testified the victim had a swollen and bruised face and forehead, a cut lip, abrasions on her wrists and left ankle and numerous abrasions and bruise marks on her buttocks, all of which were photographed. A neurological examination was also administered because of the beating to the face and head. A sexual assault examination was not administered because the victim believed appellant did not penetrate her since she was fighting so desperately.

Appellant's van was searched twice. The first time occurred at the immediate crime scene. Property taken from the van included three $20 bills exchanged between appellant and the victim, the starter pistol with which appellant threatened the victim, the handcuffs appellant used to bind the victim's hands behind her back, and the gag, still covered with the victim's blood. Also recovered in this search were alligator clips weighted with lead sinkers, a collar purportedly used in a "slave-master relationship," a pair of pink panties, and a "dildo."

The second search occurred on October 30, 1986 when Sergeant Patrick McGowen searched appellant's van pursuant to a valid search warrant. McGowen recovered a cassette tape recording which recorded appellant's attack on the victim; a "restraint device" tied to the ceiling of the van and used to tie up the victim's left ankle; and two earrings, later identified by the victim as hers. Other objects seized during this search included a blonde wig, women's "falsies", a pair of women's high-heeled shoes, a pink slip, a pink bra and a woman's garter belt. In addition, a tape recorder, hidden microphones, and approximately 11 feet of fish line used as the restraint device on the victim were photographed and admitted into evidence.

After a week-long trial, the jury found appellant guilty as charged. The trial court sentenced appellant to a total concurrent term of 180 months, the statutory maximum for second degree criminal sexual conduct.

## ISSUES

1. Was appellant deprived of effective assistance of counsel due to an alleged conflict of interest?

2. Were the comments made by a witness and the prosecuting attorney proper?

3. Was certain property seized from appellant's van properly admitted into evidence?

4. Did the trial court's *ex parte* communication with the jury constitute harmless error?

5. Was the trial court's imposition of the statutory maximum sentence for second degree criminal sexual conduct proper?

## ANALYSIS

■ 1. Appellant contends he was denied his Sixth Amendment right to effective assistance of counsel because his attorney labored under an impermissible conflict of interest. He argues the impermissible conflict existed because his attorney worked for the Hennepin County Public Defender and a different public defender in that office represented the victim on a driving after suspension charge which occurred while appellant's case was pending. The same argument was raised on similar facts in *State v. Stephani,* 369 N.W.2d 540 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Aug. 20, 1985). As in *Stephani,* the record in this case fails to show an actual conflict of interest depriving appellant of his right to effective assistance of counsel. *See Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980) (in order to establish Sixth Amendment violation, defendant "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance").

■ 2. Appellant claims reversible error based on statements made during trial by a witness, Officer McGowan, and the prosecutor during closing argument. The first challenged statement from McGowan's direct testimony reads:

Q. Now, to your knowledge, was any other investigation done before you got the case?

A. Lieutenant Weiss, assigned to the Family Violence Unit, had gone to the scene and had went to the hospital, and

that was it. And I believe he did go to the Hennepin County Jail also to talk to Mr. Holscher.

After further questioning of that witness by the prosecutor, appellant moved for a mistrial based on the witness' alleged improper reference to appellant's right to remain silent. Appellant argued the statement implies the officer attempted to talk to appellant and appellant wouldn't talk to the officer. That implication, however, is not evident from the officer's statement and the trial court properly denied appellant's motion for a mistrial on that basis.

▪ The second challenged statement by the prosecutor at closing reads:

So what can the defendant tell you? The defendant must admit those things which he must admit. He must admit that he was there. He must admit that the victim was in fact bound, confined, gagged, even beaten. He must admit that he made threats against her. He must admit that she was screaming, kicking and fighting.

What can he say? He can [sic] this all happened, because he really can't deny that in light of the evidence. But he can say that this was all consensual, that this was all play-acting on the victim's part. Because if you believe that it was consensual, then there was no crime here— there is no kidnapping, no false imprisonment, no criminal sexual conduct, and not even any real terroristic threats. So he must go after the element of consent and urge you to believe that [the victim] in fact consented to all of these activities against her.

Appellant similarly argues these statements reflect adversely on his right to remain silent. Appellant, however, did not object to these particular statements. *See State v. Parker*, 353 N.W.2d 122, 127–28 (Minn.1984) (defendant is deemed to have waived right to raise issue concerning prosecutor's closing remarks if defendant fails to object or seek cautionary instructions, but reviewing court may nevertheless reverse if statements are unduly prejudicial).

We conclude the prosecutor's statements are not unduly prejudicial. In general, a prosecutor's closing argument "is to be taken as a whole and no single phrase is to be taken out of context and used as a basis for reversal * * *." *State v. Gulbrandsen*, 238 Minn. 508, 509, 57 N.W.2d 419, 421 (1953). A prosecutor is entitled to anticipate final arguments for a defendant. *See State v. Johnson*, 359 N.W.2d 698, 702 (Minn.1984). Taken in context, the prosecutor's statements here comprise an argument anticipating and rebutting appellant's argument that the victim consented to her treatment, which in fact appellant did argue at his closing.

▪ 3. Evidence that in some degree advances the inquiry and therefore has probative value is relevant evidence and may be admitted. Minn.R.Evid. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Minn.R. Evid. 403. This determination rests within the sound discretion of the trial court and will only be reversed if the trial court abused its discretion. *State v. Olkon*, 299 N.W.2d 89, 101 (Minn.1980), *cert. denied*, 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981).

Appellant claims the trial court abused its discretion by admitting a leather belt, alligator clips weighted with lead sinkers, a collar, a pair of pink panties, a dildo, a pair of high heeled shoes, a blonde wig, a pair of falsies, a pink slip, a pink bra, and a garter belt. Appellant argues that since this evidence was never shown to have been used against the victim or by appellant to engage in autoerotic acts, the evidence is inadmissible on relevancy grounds.

The trial court agreed with respondent that because appellant beat the victim on intimate parts of her body rather than sexually penetrating her, the challenged evidence tended to help enlighten the jury as to appellant's state of mind and intent during the attack. Specifically, respondent argued the evidence showed "appellant's acts were performed to satisfy both his sexual and aggressive impulses."

▪ We agree the challenged objects are probative of appellant's intent and state of

mind. Further, the lack of an absolute connection does not affect the admissibility of the challenged evidence, but only the weight accorded it. *State v. Olek*, 288 Minn. 235, 242, 179 N.W.2d 320, 325–26 (1970). Moreover, given the overwhelming nature of the evidence against appellant, introduction of the challenged evidence would not have affected the outcome of the trial.

4. Minn.R.Crim.P. 26.03, subd. 1(1) provides that a "defendant shall be present * * * at every stage of the trial * * *." *Id.* However, "the mere occurrence of an *ex parte* conversation between trial judge and juror does not constitute a deprivation of a constitutional right mandating automatic reversal * * *." *State v. McGath*, 370 N.W.2d 882, 884 (Minn.1985). The United States Supreme Court has declared that even undisclosed, unrecorded *ex parte* discussions between trial judge and juror can be harmless error. *Rushen v. Spain*, 464 U.S. 114, 121, 104 S.Ct. 453, 457, 78 L.Ed.2d 267 (1983) (cited in *McGath*, 370 N.W.2d at 884).

■ In this case, before the verdict was announced, the trial court disclosed and made a record of three questions directed to the court by the jury foreperson. The court answered each question through the bailiff during the jury's deliberations. The first question concerned the requirement of a unanimous verdict on the kidnapping charge; the second regarded a request for a tape recorder; and the third concerned the definition of kidnapping. At sentencing, appellant objected to this communication when he moved for a new trial. The court denied that motion.

On appeal, appellant does not challenge the answers the court gave, but claims error regarding the improper procedure. The record, however, fails to show any prejudice to appellant. *See McGath*, 370 N.W.2d at 886. The error is therefore harmless beyond a reasonable doubt. *See Rushen*, 464 U.S. at 121, 104 S.Ct. at 457 (when evidence adequately supports contention that no prejudice occurred, error is harmless beyond reasonable doubt).

5. Appellant lastly contends the trial court improperly imposed a 180 month sentence, the statutory maximum, which is four times the presumptive guideline amount for a severity VII offense and criminal history score of 2. Appellant argues the court failed to articulate its reasons for departure and even if aggravating factors do exist, he deserves no more than a double departure.

■ At sentencing, the trial court did state its reasons for departure by adopting respondent's argument regarding an upward departure. Respondent argued the extremely cruel manner in which the victim was treated constituted severe aggravating circumstances which allowed the court to impose the full statutory maximum as allowed in *State v. Mortland*, 399 N.W.2d 92, 95 (Minn.1987).

We conclude the record supports the trial court's imposition of the statutory maximum in this case and note an additional aggravating factor arises from appellant's criminal history. Minn. Sentencing Guidelines II.D.2.b(3) (1986) (aggravating factor when current offense conviction caused injury and prior felony conviction also caused injury). Appellant's criminal history includes prior felonies in which his victims were not only injured from beatings, but one in which a 12–year–old girl was beaten to death.

## DECISION

No reversible error occurred in the conviction and sentencing of appellant.

Affirmed.