**STATE of Minnesota, Respondent,**

v.

**James Allen OLSON, Appellant.**

**No. C4–88–1220.**

Court of Appeals of Minnesota.

March 14, 1989.
Review Denied April 26, 1989.

Hubert H. Humphrey, III, Atty. Gen., Jeanne J. Graham, Sp. Asst. Atty. Gen., St. Paul, Gary Fridell, Goodhue Co. Atty., Red Wing, for respondent.

David G. Roston, Segal & Roston, Minneapolis, for appellant.

Heard, considered and decided by SHORT, P.J., and NIERENGARTEN and NORTON, JJ.

## OPINION

SHORT, Judge.

James Allen Olson appeals from a conviction of murder in the second degree under Minn.Stat. § 609.19(2) (1988). He contends that he was denied the right to a fair trial by the trial court's evidentiary rulings, that the evidence is insufficient to support the conviction, and that the trial court erred in sentencing. We affirm.

## FACTS

In February of 1987, appellant, his girlfriend, Gloria Morrison, and Morrison's two young daughters (ages 5 and 3) moved to a farmhouse in Goodhue County, Minnesota. In May of 1987, Morrison began working the afternoon-evening shift at a local nursing home. Appellant stayed home to watch the girls. On May 27, appellant telephoned emergency personnel because Morrison's 3-year-old daughter had been injured. Upon arrival, the emergency personnel found the girl lying on the kitchen floor in a gravely injured condition. The child had sustained severe injuries, including bruises to her head, along her back, down her arms, and on her torso and legs. She was transported to a hospital in Red Wing and then flown by helicopter to a hospital in Rochester, Minnesota. She died two days later.

The Olmstead County Coroner found evidence of hemorrhaging in the victim's abdomen area, estimated to be about one week old. He found that she had sustained two separate injuries to her head which together caused bilateral subdural hematoma leading to her death. The coroner also discovered that the victim's shoulder and forearm had been fractured at least six months before she sustained her fatal injuries, but had not been treated by a physician. Other bruises on the victim's body were estimated by various medical personnel to have been sustained days, weeks, or months before she was finally brought to the hospital. The coroner classified her death as a homicide.

On May 28, 1987, Goodhue County detectives, acting pursuant to a valid search warrant, entered appellant's home and seized a number of items specified in the warrant. They also seized a night stick which was lying on the kitchen table. Appellant and Morrison were arrested and charged with having caused the death of the victim. Appellant was charged with murder in the second degree, murder in the third degree, manslaughter in the first degree, and malicious punishment of a child. See Minn.Stat. §§ 609.19(2), 609.195, 609.-20(2) and 609.377 (1988).

At trial, appellant testified that on May 23 the victim's sister entered the barn in which appellant was doing chores and told him that the victim had fallen upside down onto the concrete floor of a pigpen. Appellant said that he found the victim wedged head down between a fence and the pig feeder. Appellant said that he attempted to treat the victim, and that Morrison also attempted to treat her. Although appellant claimed that the victim was severely injured, was screaming hysterically, and looked as if she had broken her neck, he did not seek medical treatment for her. Appellant testified that a few days later, on the evening of May 27, he discovered the victim lying on her back with fluid coming out of her nose. He attempted to revive her, but was unable to do so. He called Morrison at work and then called emergency personnel.

The state presented the testimony of the victim's five-year-old sister. She testified

that appellant frequently picked up her sister by her feet and would swing her around, allowing her head to hit the ceiling. She further testified that appellant kicked the victim down some stairs and attempted to drown her in the bathtub. Finally, the victim's sister testified that she never saw her sister fall into the pigpen and never told appellant that the victim had sustained such a fall.

The state also presented the testimony of various medical experts, who testified (a) to the various locations and ages of the bruises on the victim's body, (b) that the injuries could not have resulted from a single fall, but were likely the result of a series of beatings, and (c) that the injuries sustained were inconsistent with the fact scenario presented by appellant. Appellant's medical expert testified that the victim's injuries might have been caused by a fall. However, that expert agreed that the injuries could have been caused by multiple beatings.

After a jury trial, appellant was convicted on all counts. The trial judge sentenced appellant only for the crime of felony murder in the second degree. *See* Minn.Stat. § 609.035 (1988). The judge imposed a sentence of 420 months in prison, which is four times the presumptive sentence, but 60 months less than the 40 year maximum statutory sentence for second degree murder. *See* Minn.Stat. § 609.19 (1988); Minnesota Sentencing Guidelines IV. On appeal, appellant argues that (1) he was denied the right to a fair trial by the trial court's evidentiary rulings; (2) the evidence is insufficient to support the conviction; and (3) the trial court erred in sentencing.

## ISSUES

I. Did the trial court's evidentiary rulings violate appellant's rights to due process and a fair trial?

II. Is the evidence sufficient to support appellant's conviction?

III. Did the trial court err in its upward departure from the presumptive sentence specified in the Sentencing Guidelines?

## ANALYSIS

### I.

Appellant argues that he was denied the right to a fair trial by certain of the trial court's evidentiary rulings. He argues that a night stick admitted into evidence by the trial court was seized in violation of the fourth amendment and was irrelevant under Minn.R.Evid. 401. Also, appellant argues that photographs taken during the victim's autopsy were admitted by the trial court in violation of Minn.R.Evid. 403. We disagree.

### A. Seizure of the Night Stick.

An object in plain view may be seized provided: (1) the initial police entry is lawful; (2) the police discover the object "inadvertently;" and (3) it is immediately apparent to the police that the object may be evidence of a crime, or otherwise subject to seizure. *Coolidge v. New Hampshire,* 403 U.S. 443, 465–470, 91 S.Ct. 2022, 2037–2040, 29 L.Ed.2d 564 (1971); *see also Texas v. Brown,* 460 U.S. 730, 736–37, 103 S.Ct. 1535, 1540–41, 75 L.Ed.2d 502 (1983). When an officer who is lawfully executing a search warrant comes upon other items which he has probable cause to believe are evidence of a crime, he may take them without obtaining another warrant. *State v. Rieck,* 286 N.W.2d 724, 726 (Minn.1979). The reviewing court "should accept the officer's on-the-scene probable-cause assessment if reasonable [minds] would under the same circumstances make the same determination." *State v. Compton,* 293 N.W.2d 372, 375 (Minn.1980).

There is no dispute that the officers entered appellant's home pursuant to a valid search warrant. Prior to executing the warrant, the officers had seen the victim's bruised body and spoken with the doctors who performed the autopsy. The night stick was on the top of the kitchen table in the same room where the victim's body was discovered. Under these circumstances, the seizure of the night stick was clearly within the "plain view" exception to the fourth amendment exclusionary rule.

### B. Admission of the Night Stick.

■ A trial court's admission of physical evidence will be upheld unless it constitutes an abuse of discretion. *State v. Daniels*, 361 N.W.2d 819, 827 (Minn.1985). An object is admissible into evidence if it tends to connect the defendant to the crime. *Id.;* *State v. Johnson*, 324 N.W.2d 199, 201 (Minn.1982). The lack of an absolute connection between the object introduced into evidence and the alleged crime does not affect the admissibility of the challenged evidence, but only its weight. *State v. Olek*, 288 Minn. 235, 242, 179 N.W.2d 320, 325–26 (1970); *State v. Holscher*, 417 N.W. 2d 698, 703 (Minn.Ct.App.1988).

■ Appellant argues that his conviction should be overturned because the trial court admitted the night stick into evidence. His reliance on *State v. Lubenow*, 310 N.W.2d 52 (Minn.1981) to support his argument is misplaced. In *Lubenow*, there was no basis for inferring that the hunting arrows had any connection with the crime. *Id.* at 56. More importantly, there was insufficient evidence on the record as a whole to sustain Lubenow's conviction. *Id.* at 57. By contrast, there was ample reason to believe the night stick had been used to beat the victim. The trial court did not abuse its discretion in admitting the night stick. Even if the night stick was irrelevant, any error in admitting it was harmless in light of other overwhelming evidence as to appellant's guilt.

### C. Admission of the Autopsy Photographs.

■ The admission into evidence of photographs taken at the autopsy of a murder victim is a matter in the discretion of the trial court, and will not be reversed absent a showing of clear abuse of discretion. *State v. Nurmi*, 336 N.W.2d 65, 67 (Minn. 1983). Photographs are admissible so long as they accurately portray anything that a witness can describe in words and their probative value outweighs their prejudicial effect. Minn.R.Evid. 403; *State v. Sanders*, 376 N.W.2d 196, 200 (Minn.1985); *State v. DeZeler*, 230 Minn. 39, 40, 41 N.W. 2d 313, 319 (1950).

■ Appellant argues that the photographs were more prejudicial than probative because the medical cause of the victim's death is not in dispute. Appellant does not dispute that she died from complications caused by a head injury; he contends, however, that the head injury resulted from an accidental fall. The Minnesota Supreme Court rejected a similar argument in *State v. Durfee*, 322 N.W.2d 778 (Minn. 1982). In *Durfee*, the defendant, charged with assaulting a child, claimed the victim had fallen from her crib. The Supreme Court wrote:

> Admittedly, the appellant was not contending at trial that [the child] did not suffer great bodily harm; the real issue was whether appellant intentionally caused that harm. The photographs were relevant on that issue because they provided demonstrable, visual evidence to the jury of the extent and severity of [the] injuries indicating their cause and source.

*Id.* at 786.

The same rationale exists for admitting the photographs in the present case. Various medical experts testified that the child's injuries were not consistent with appellant's testimony that they had been caused by a single fall. The jury was better able to understand the state's theory of the case by viewing photographs indicating the severity and location of the various bruises and injuries. The photographs thus were probative, and their admission was not an abuse of discretion.

### II.

In evaluating the sufficiency of the evidence to support a criminal conviction, this court must view the evidence in the light most favorable to the state, and assume that the jury believed the state's witnesses and disbelieved any contrary evidence. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn. 1978). The credibility of witnesses is for the jury to determine, and the resolution of conflicting testimony is exclusively within the jury's province. *State v. Daniels*, 361 N.W.2d at 826.

Appellant argues that the evidence is insufficient to sustain his conviction because it was circumstantial in nature and consisted largely of medical testimony. "[C]ircumstantial evidence in a criminal case is entitled to as much weight as any other kind of evidence so long as the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of his guilt." *State v. Linder,* 304 N.W.2d 902, 906 (Minn.1981) (quoting *State v. Morgan,* 290 Minn. 558, 561, 188 N.W.2d 917, 919 (1971)).

In the present case, the jury had evidence before it tending to prove that appellant committed the crimes with which he was charged. Of the medical witnesses who testified, all but one testified conclusively that the victim's death was caused by a severe beating, and that she had sustained other beatings at an earlier time. The single medical expert who did not so testify could not rule out the possibility that the victim had been beaten to death. Further, the victim's older sister testified that appellant had beaten the victim in the past, and that the victim had not fallen into a pigpen as appellant claimed. Assuming that the jury believed the overwhelming medical testimony and the testimony of the victim's sister and disbelieved appellant's testimony, the evidence is sufficient to support the convictions.

### III.

The trial court has broad discretion in sentencing, and will not be reversed absent a clear abuse of discretion. *State v. Watts,* 413 N.W.2d 192, 194 (Minn.Ct.App. 1987). Factors which the court may consider in its decision include the vulnerability of the victim, the particular cruelty toward the victim, and the extent of the victim's injuries. Minnesota Sentencing Guidelines II.D.103. When severe aggravating circumstances are present, then the only absolute limit on sentence duration for the offense is that provided by the legislature in the statute defining the offense. *State v. Glaraton,* 425 N.W.2d 831, 834 (Minn. 1988).

At the sentencing hearing, the trial judge gave clear reasons for his decision to depart from the presumptive sentence. He stated that: (a) the victim was particularly vulnerable because she was very young and could neither physically protect herself nor report the abuse to those who could have helped her; (b) the appellant held a position of authority and trust over the victim; (c) the appellant treated the victim with particular cruelty; and (d) the appellant abused the victim in front of her older sister, who has suffered severe psychological trauma as a result. The upward departure was justified by the severe aggravating circumstances of this case. The trial court did not abuse its discretion in sentencing appellant.

### DECISION

The trial court's evidentiary rulings were proper and did not deny appellant a fair trial. The evidence was sufficient to sustain the conviction and the trial court did not err in sentencing appellant.

AFFIRMED.